HUTTER v. DE Q. BOTTLE STOPPER CO. et al.

(Circuit Court of Appeals, Second District. January 12, 1904.)

No. 31.

1. PATENTS—INFRINGEMENT—VARIATION IN FORM.

Where a patent shows invention, although it is of narrow scope, one who has appropriated all that is valuable in the invention cannot escape infringement by changes in form or structure which are nonessential, and do not change the principle of operation of the device.

2. SAME—EVIDENCE OF INFRINGEMENT.

A single sale of an infringing article, made under circumstances which indicate a readiness to make other similar sales upon application, is sufficient to make out a prima facie case of infringement.

3. SAME.

Where an allegation in the bill that defendant was located and doing business in the city of New York was not denied, proof of the purchase of infringing articles at a place in New York City bearing a sign with defendant's name on it is sufficient, prima facie, to establish that the sale was made by defendant.

4. SAME—SUIT FOR INFRINGEMENT—JOINDER OF OFFICER WITH CORPORATION.

The joinder with a corporation of one of its officers as defendant in a suit for infringement, where there is no proof that he had any part personally in the infringement, is not justified, and warrants the imposition of costs on the complainant.

5. SAME—INFRINGEMENT—BOTTLE STOPPERS.

The Hutter patent, No. 491,113, for a bottle stopper, is for a new and useful combination, which discloses patentable invention; also *held* infringed.

6. SAME—DESIGN FOR BOTTLE STOPPER.

The Hutter design patent, No. 25,435, for a design for a bottle stopper, conceding its validity, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 119 Fed. 190.

This is an appeal from a decree of the Circuit Court of the United States for the Southern District of New York, sustaining the validity of two certain letters patent, granted to the complainant. The first of these, No. 491,113, dated February 2, 1893, is for a combination of mechanical elements constituting a bottle stopper. The second, No. 25,435, dated April 28, 1896, is for a design for a bottle stopper. The opinion of the Circuit Judge is reported in 119 Fed. 190. The opinion of Judge Gray, in the case of Hutter v. Broome, District of New Jersey, which was followed by the court below, is reported in 114 Fed. 655.

George H. Fletcher and Henry Schmitt, for appellants.
Arthur v. Briesen and Hans v. Briesen, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. Little need be added to the careful and comprehensive discussion of the defenses challenging the validity of the mechanical patent, to be found in the opinion delivered in Hutter v. Broome. It was there decided that the introduction into the

old mechanism of a stopper having in the top a heart-shaped slot resulted in a new combination producing a useful and novel result. That the theater of invention was circumscribed was admitted in the New Jersey case, but the court found that the advantages attributable to the new element were of sufficient importance to sustain patentability. In this we concur. The patented device is readily adjustable, easily kept clean and the bail mechanism can be used again in cases where the stopper is broken. The heart-shaped opening compels the bail piece to center automatically and properly when the pressure of the lever is applied and it permits the bent ends of the bail to be passed through it so that a new plug can readily be substituted for one that has, for any reason, ceased to be available. In short, the Hutter device seems to have remedied former defects and supplied what was needed, namely, a simple, cleanly, durable, cheap and easily manipulated bottle stopper. The fact that this result was accomplished by a simple change does not detract from its patentability.

The defense of noninfringement was not, apparently, relied on in the New Jersey suit, at least there was no discussion of the question in the opinion, the court, seemingly, regarding infringement as conceded, or so clearly established as to require no comment. In the case at bar the plea of noninfringement is strenuously urged, but the argument in its favor is based upon a limitation of the claim to the strictest possible construction, restricting it to the precise structures shown in the drawing and to a rigid interpretation of specification and claim which permits not even the slightest departure from the language employed.

The specification says of the heart-shaped slot:

"This slot, i, is of such a size in cross-section, at its widest portion, that the inwardly bent ends, d², of the bail-wire can be passed through it as shown in Fig. 3."

One of the elements of the claim is "the slot, i, being wider than the bend, d², of the bail-wire is long."

The defendants insist that this language must be construed literally so that when the bail is passed through the slot its base line must be at right angles to the axis of the slot and that if there be the slightest deviation from this position, as shown in Fig. 3, infringement is avoided. We find nothing in the file wrapper, the specification or the prior art requiring so illiberal a construction. It should be the endeavor of a court of equity to save rather than to destroy a meritorious invention; the court should not permit a notorious infringer to escape by the use of a perfectly transparent disguise. If the defendants' contention be correct no one can infringe except some brainless automaton who insists on using an exact reproduction of Fig. 3, alike in all details of length, width and angle down to the smallest fraction of an inch. Should such a one display the slightest common sense in the construction of the parts or even in their manipulation he would avoid infringement in spite of himself.

The court in the Broome Case understood the claim to mean that the upper part of the heart-shaped slot should be wide enough to

permit the bent end of the bail to pass through readily. Such an interpretation is not only reasonable, but accords with the following statement of the specification:

"With the aid of my heart or triangular shaped slot, i, made as described I am enabled to readily pass through it a bail-wire having its ends, d², already bent onto it."

We are clearly of the opinion that the defendants cannot appropriate all that is valuable in complainant's invention by making the ends of their bail-wire slightly longer than the width of the slot, if, by changing the angle at which the ends are inserted, or by making a slight flare at the opening of the slot, they are able to pass the bail ends through in the manner described in the patent. Structurally the bent end may be longer than the width of the slot; actually, during the process of being passed through, it is shorter. That the end of defendants' bail-wire passes readily through the slot is admitted, but it is necessary to give it a swinging motion which, it is assumed, is prohibited by the patent. One of defendants' experts says:

"In all the stoppers shown me both complainant's and defendants', the transverse apertures through the plugs although varying somewhat in width are so narrow that the end of the bail cannot be passed through it. otherwise than by the movement in a curved path, and for this reason I find that the Exhibits 'Defendants' Bottle Stoppers' do not contain the alleged invention shown in the drawings, described in the specification and particularly recited in the claim of complainant's mechanical patent."

A position so highly technical and hypercritical cannot be maintained. The defendants' stoppers, in so far as the mechanical construction is concerned, are substantially identical with those of the complainant; some of them, indeed, meet the requirements of the claim even as construed by the defendants, for they permit the bail end to pass straight through the slot without any swinging motion.

The defendants argued at great length in support of the proposition that there was not sufficient proof of sales of the infringing stopper by the defendant corporation. A single sale made in circumstances which indicate a readiness to make other similar sales upon application is sufficient to make out a prima facie case. It appeared that a young man, one Rieglesperger, in the employ of the complainant, was directed by the head shipping clerk to go to 47 Murray street with a written order and to buy a gross of bottle stoppers with attachments complete. He went to that address and entered a place of business with the sign "Fensterer & Ruhe." It stands admitted by the pleadings that Francis H. Ruhe is the secretary and treasurer and that Gabriel Fensterer is a director of the defendant, The De Q. Bottle Stopper Co. In the store of Fensterer & Ruhe at 47 Murray street, Riegelsperger found three men whom he had never seen before, and whose names he did not know. He spoke to the first one he met and asked him for bottle stoppers. The person so addressed requested him to wait a while, and after about 10 minutes took him over to another store at 50 Warren street, in the next block, up two flights of stairs. In this building the only sign he noticed was one on the ground floor as he went inside the

building. It read. "The De Q. Bottle Stopper Company." There the man who had taken him over from Murray street got a gross of bottle Stoppers and gave them to him, with a paper on which was written in pencil the words "Jan. 12 1900 1 Gross Stopper Complete 1.75 Paid." Riegelsperger gave what he bought to the shipping clerk who sent him, and the latter produced the contents of the package, and testified that the stoppers were in the same condition in which he received them. The answer admits—by not denying—that the De Q. Bottle Stopper Co. is "located and doing business in the city of New York." It is, of course, possible that such company is located and does business in some place in said city remote from 50 Warren street, and that at the latter place, some persons unknown, wholly disconnected from the defendant company, deliver bottle stoppers to individuals who come provided with the cash to pay for them, and at the same place, without the knowledge, or assent, or connivance of the defendant company display a sign reading "The De Q. Bottle Stopper Co." This is possible, but to an intelligent mind it seems highly improbable, and we are clearly of the opinion that complainant's evidence made out a prima facie case, sufficient to put this defendant to its proof. If the complainant's witness were mistaken a few words of denial would have saved years of protracted and expensive litigation. The fact that no denial was vouchsafed is persuasive that it could not have been made truthfully.

The assignments of error, which present various points of practice and the other assignments which challenge the correctness of the rulings of the Circuit Court in refusing to expunge certain testimony as incompetent and irregularly taken, need not be considered, for the reason that they are academic and inconsequential, in view of the disposition made of the cause upon the merits. They might have some relevancy to the question of costs, were it not for the fact that this question also must be disposed of by paramount considerations.

Francis H. Ruhe, who is alleged in the bill to be secretary, treasurer and one of the directors of the defendant company, is made a party defendant. There is not the slightest proof to establish infringement by him as an individual and no sufficient reason is shown for making him a defendant. An injunction against the corporation restrains all its officers, agents and servants and there is little justification for making these persons defendants except in rare instances where it is shown that they have infringed the patent as individuals or have personally directed infringement. The courts of this circuit have frequently had occasion to criticise this practice and have, in some instances, imposed costs upon the complainant as a penalty for thus subjecting innocent parties to the expense and annoyance of defending themselves against an unwarrantable accusation. Farmers' Mfg. Co. v. Spruks Mfg. Co. (C. C.) 119 Fed. 594; Consolidated Fastener Co. v. Columbian Fastener Co. (C. C.) 79 Fed. 795; Bowers v. Atlantic Co. (C. C.) 104 Fed. 887; King v. Anderson (C. C.) 90 Fed. 500; Greene v. Buckley (C. C.) 120 Fed. 955; Rowbotham v. Iron Co. (C. C.) 71 Fed. 758; Linotype Co. v. Ridder (C. C.) 65 Fed. 853; Howard v. Plow Works (C. C.) 35 Fed. 743.

The design patent is for a bottle stopper having a head portion, A, a base portion, B, and two beads, C and D. The specification says:

"C is a bead having its periphery substantially parallel to the periphery of the head portion: D is a bead located below and extending beyond the lower edge of the bead, C."

The claim is for a stopper having these four characteristics, namely, a head, a base, and two beads.

Conceding the validity of the patent, a proposition which we assume but do not decide, we are of the opinion that the defendants have not infringed. Of course the two stoppers resemble each other, just as two corks resemble each other; they are both stoppers, have the same general characteristics and are designed to accomplish the same purpose. The defendants' stopper does not, however, have some of the features made essential by the language of the patent. Without entering into details, it suffices to say that the annular bead, C, is entirely absent from the defendants' structure. There is no equivalent substituted for the missing part and in this respect the two present a different appearance to the eye. Regarding the absence of the bead, C, from the defendants' stopper the complainant is in accord with the two experts of the defendants. He was shown the alleged infringing exhibits and was asked "whether any of them contain the bead, C, shown in the design patent." His answer was "No." The best explanation which counsel for complainant can make of this answer is "that he did not understand the meaning of the word 'bead,' giving it probably the conventional meaning of a pearl-shaped bead. He saw no such beads on the stoppers." The suggestion that the originator of the design supposed that the cross-examiner desired to know whether he found an article of jewelry attached to the defendants' "plug bottle-stoppers," cannot be criticised for want of "novelty" and "invention," but it is lamentably lacking in "utility."

It follows that the decree, in so far as it relates to patent No. 491,-113 is affirmed, and in so far as it relates to patent No. 25,435 is reversed.

Neither the complainant nor the defendant corporation is entitled to costs as against the other either in this court or in the Circuit Court.

As to the defendant Ruhe the decree is reversed with costs and the Circuit Court is instructed to dismiss the bill as to him with costs. The cause is remanded to the Circuit Court to enter a decree in conformity with this opinion.