### HUTTER v. KOSCHERAK.

(Circuit Court, S. D. New York. February 14, 1905.)

**1. PATENTS—SUIT FOR INFRINGEMENT—DEFENSE OF LACHES.**

The owner of a patent is not subject to a plea of estoppel, laches, or implied license because of delay in bringing suit against an infringer during the pendency of a test suit in which the validity of the patent was involved.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 468.]

**2. SAME—INFRINGEMENT—BOTTLE STOPPERS.**

The Hutter patent, No. 491,113, for a bottle stopper, *held* valid and infringed on motion for a preliminary injunction.

In Equity. Suit for infringement of letters patent No. 491,113 for a bottle stopper, granted to Karl Hutter February 7, 1893. On motion for preliminary injunction renewed.

Arthur v. Briesen, for the motion.
Louis C. Raegener, opposed.

LACOMBE, Circuit Judge. The new patents Haas, Woodbury, etc., are not sufficiently persuasive to induce this court, on motion for preliminary injunction, to modify the construction given to the patent by the Circuit Court of Appeals. 128 Fed. 283, 62 C. C. A. 652. Upon that construction the slot of the stoppers which defendant has recently been selling infringes, and I do not think infringement is avoided on any theory that the porcelain shank is not a conical tapering plug. The stopper is a conical tapering plug when it is ready for use with the rubber on.

The evidence which was promised that complainant was himself interested as partner or similarly with the concern in Germany which manufactured the stoppers sold by defendant has not been produced, and the written license to such manufacturer expressly reserves the style of slot which is covered by the American patent.

Upon the question of implied license, estoppel, and laches the record has been most carefully examined. When the testimony is studied with the exhibits in hand, most of the difficulties suggested by the argument quickly disappear. Defendant's theory as to socalled misleading conduct of the complainant is based entirely upon the assumption that during the period in which defendant and his predecessor were selling stoppers there was no change whatever in the form of slot. Some of the witnesses testify that there was no such change, but the exhibits which defendant abun-

dantly proved show this to be a mistake. The exhibits "Made in Trenton" and "Wallace stopper" are manifestly infringements, and it appears that complainant or his counsel promptly objected to them in 1895, and that defendant knew of such objection. The exhibits of the later stoppers which defendant now sells are also clearly infringements. But between these two groups it appears that defendant or his predecessor sold stoppers with slots slightly, but substantially, different. The exhibits "1895 stopper made in Germany," and "Stopper made for defendant by Muller prior to August 1, 1895," lack the so-called "apex," which induces the centering of the bail-wire, the distinctive merit of the patented device. That is plain upon inspection, and the wax impressions of the "1895 stopper made in Germany" and of the stopper now made by defendant indicate the differences still more sharply. It is admitted by defendant's witnesses that within the past nine years there have been changes made in defendant's stoppers. The witnesses insist that such changes were only in the shank, but the exhibits they produce show that in that respect their recollection is at fault. The exact dates of the changes in the slot from "Trenton" and "Wallace" to "1895" and "Made by Muller," and back again to the present type, are not shown. For aught that appears, after Hutter had objected to the infringing type like "Trenton" and "Wallace," and after the other type was adopted, there may have been no reverter to the infringing type till within three years, which defendant testifies is the date of change to the type now in use. At that time complainant was pressing his test suit which the Court of Appeals decided last year, and under such circumstances estoppel, laches, or implied license are not made out.

Careful study of the exhibits indicates further that the assertion made on behalf of defendant that injunction will work irreparable injury, will destroy his business, and subject him to financial ruin, is a delusion. The two models "Exhibit 1895 stopper made in Germany" and "Exhibit stopper made for defendant by Muller prior to August 1st" differ substantially from the slot of the patent by having a flattened-out lower surface. Upon this record, certainly, they cannot be held to infringe, and complainant's counsel concedes that, for he says in his brief in both of these "the bottom of the slot is substantially a straight line; it has no cam action, and exercises no centering tendency on the bail-wire, as does the lower curved portion of the defendant's present stopper." Therefore the defendant, even if enjoined from selling his present stopper, would still be free to sell stoppers with slots like the "1895 made in Germany," and the "Made for defendant by Muller prior to August 1st," with whatever variety of shank he might prefer. Inasmuch as defendant and his witnesses insist that all the types of stopper which they have sold are practically the same so far as the slot is concerned, and therefore equally good except for defendant's alleged improvements in the shank, it is difficult to see how he can be seriously injured by being confined to one of the forms of slot which he has himself used, and, as his testimony shows, successfully.

Complainant may take injunction pendente lite, with a clause reserving from its operation stoppers with a slot such as shown in the two exhibits above referred to.