BONSALL v. T. J. HAMILTON MFG. CO. et al.

(Circuit Court, S. D. New York. June 16, 1905.)

1. PATENTS—INFRINGEMENT—WARDROBE TRUNKS.

The Bonsall patents, Nos. 604,346 and 642,075, both relating to wardrobe trunks, were not anticipated, and disclose invention. Claim 3 of the former, and claim 4 of the latter, also *held* infringed.

2. SAME—NOVELTY—GARMENT HANGERS.

The Bonsall patent, No. 661,947, for a garment hanger for use in wardrobe trunks, is void for lack of patentable novelty.

In Equity.

H. S. Mackaye, for complainant.
D. Walter Brown, for defendants.

HAZEL, District Judge. This action is brought to restrain defendants from infringing three United States letters patent owned by complainant, who was the inventor, as follows: No. 604,346, dated May 17, 1898, for improvement in dress skirt and wardrobe trunk; No. 642,075, dated January 30, 1900, for improvement in receptacle for clothing; and No. 661,947, dated November 20, 1900, for improvement in accessible garment hanger. The defenses are anticipation and denial of infringement. Claim 3 of patent No. 604,346, claim 4 of patent No. 642,075, and claim 1 of patent No. 661,947 are involved. Many prior patents relating to wardrobe trunks are found in the record, but none embody the precise elements of the combination of the patents in suit. The claims involved are narrow, and contention is not made for a broad construction. The first-mentioned patent has five claims, and describes a wardrobe trunk adapted for hanging skirts and other garments

upon a hanging device, so that the garments may be packed at full length, instead of placing them in the trunk in the old-fashioned way. The trunk, which has rounded or conoid sides, a flat top and bottom, and one flat end (the interior being a rectangular prism), may also be used as a wardrobe or closet when at its destination. This is better understood by reading the description of claim 3. There a trunk is claimed which has a slide arranged to move forward when the trunk stands on one end, a prop at the front end of the slide, and a cover flap attached to the trunk at one end, which, when open, affords a bearing for the prop at its lower extremity. The utility of the slide and frame upon which movable hangers for garments are hung, in combination with the trunk, is unquestioned. The slide and frame, with garments hanging upon a hanger device, with the prop at its forward end, is adapted to be drawn forward out of the trunk. When so pulled forward the trunk ordinarily is in an upright position, the top half of the cover thrown back, and the lower half, which sustains the prop, lying flat on the floor. By this innovation the trunk, with the clothing displayed upon the rack, may readily be moved about at the option of the user. The primal object of the patentee was to construct a wardrobe trunk which would combine the elements of lightness, strength, and compactness. The wardrobe trunks of the prior art principally have drawers, folding or movable parts, which occupy much space and reduce the capacity of the trunk. Patent No. 642,075 is a modification of the earlier. The improvement consists in attaching the upper end of the propping frame by a sliding socket to horizontal rods extending in the direction of the movements of the slide. This enables moving the frame back into the trunk closely against the garments hanging on the rods. In the earlier patent the propping frame held the clothing firmly only when the trunk was completely filled, while in the later, irrespective of the quantity contained therein, the clothing is securely confined in the trunk. Claim 4 of patent No. 642,075 has three elements, namely, a sliding rack, side rods, and a confining frame adapted to serve as a support for the rack when the same is drawn out. Patent No. 661,947 is for a so-styled graduated hanger, and is specially adapted for hanging men's garments in a trunk of the class mentioned, with a view of preserving their shape, and withdrawing a particular garment without disarranging or removing others packed therein. Are the claims of the patents infringed by the defendants, or any of them?

As to patent No. 604,346: The proofs show that in September, 1889, the defendant Hamilton-Noyes Company, dealer in wardrobe trunks, solicited of complainant, without success, the right to sell the trunk manufactured by him under the patents in controversy. Afterward the defendant Hamilton-Noyes Company brought into the market a flat-top wardrobe trunk, with a sliding frame, without a prop and without a garment hanger, manufactured by the defendant T. J. Hamilton Manufacturing Company. This trunk construction did not prove a commercial success, and thereupon the defendant corporations manufactured and sold a wardrobe trunk in outward resemblance of that of complainant, with

the so-called follower device. Defendants contend that the follower device was not intended as a prop for the sliding frame, as evidenced by the fact that the follower did not touch the bottom of the trunk, and furthermore that in various instances indicated by the evidence, where the follower device touched the bottom flap, the construction was unintentional and defective, and not designed to infringe complainant's patent. This contention, however, is not persuasive, especially in view of the fact that, in the construction by the defendant T. J. Hamilton Manufacturing Company of the later trunk sold by the Hamilton-Noyes Company, complainant's patented trunk was used as a guide. The defendants' follower device was the equivalent of complainant's prop. Although the patent is of a narrow scope, the defendants cannot be permitted to appropriate the essentials of the patentee's invention. The prop feature of the complainant's structure is appropriated when it is shown that the weight of the garments in the defendants' trunk caused the follower device to bear upon the flap. See Hutter v. D Q Stopper Co., 128 Fed. 283, 62 C. C. A. 652. After this suit was instituted the follower devices already constructed by defendants were reduced in size, and admittedly are now incapable of touching the bottom flap of the trunk. Instead of resting thereon, as in complainant's trunk, they swing free. As to such altered constructions (see defendants' exhibits, Women's Trunk and Men's Trunk), it is practically conceded that infringement of claim 3 is not maintainable.

As to patent No. 642,075, the proofs abundantly show that complainant's Exhibits 8 and 9 (defendants' wardrobe trunks) have a sliding rack, with side rods in combination with the so-called confining frame, adapted to slide on the rods. Opposed to this view, defendants contend that this patent is for the identical structure as that of the earlier patent, and therefore is anticipated by it. Concededly, the general construction of the sliding frame is the same; but the second patent has the additional feature already mentioned, which enables the frame to closely hold the clothing in place. The evidence shows this improvement to have been jointly infringed prior to the commencement of this action by the defendant corporations.

As to patent No. 661,947: The invention, which is not claimed in combination with a trunk, relates to bars and carrying hooks and crosspieces arranged for hanging men's coats on hangers in a wardrobe trunk. Claim 1 reads as follows:

"(1) A substantially horizontal rod, a number of hangers for clothing depending therefrom, each of which is successively longer than the preceding hanger, and means adapted to press on said clothing for securing said clothing and hangers in one position upon said rod."

The object of the patentee was to provide means whereby a convenient number of men's coats may be securely packed in a trunk and retained therein without crushing or wrinkling, and also to enable the user to take from the trunk an article of clothing suspended upon the hanger without removing or disarranging other

139 F.—26

coats or garments packed therein. The graduated hangers, arranged in series, have hooks of successively longer shanks, adapted to be hung upon bars affixed horizontally to the upper inside of the trunk. The arrangement enables the thick or upper portion of one coat to be hung close to another without crushing. Hangers, suspended from rods, of course, were familiarly known at the time of the invention, and graduated hangers of various kinds are disclosed by the prior art. In the patent to Brown, No. 183,899, dated October 31, 1876, are shown a number of horizontal · rods provided with suspended wires of different lengths, so that maps may be suspended upon a series of hangers. The patent to Fisher, No. 360,577, dated April 5, 1887, relates to wardrobe trunks and hangers of different lengths. The purpose of the Brown patent and that of the patent in suit are substantially the same, viz., to suspend objects at various lengths below a horizontal bar; the difference being that, in the invention in suit, means are provided for pressing the clothing together to secure compactness. The feature descriptive of means for pressing the clothing is thought to be found in the Bonsall patent, No. 642,075. The drawing, Fig. 4 of that patent, indicates a wire socket at the upper end of the bar or rod, adapted to slide, upon which a hanger and presser device may be suspended. According to the specification, the gist of the invention is to provide a "confining member" supported by and sliding upon a horizontal rod. Such members preferably consist of two legs or side bars joined by appropriate crosspieces, but, as stated in the patent, it may also consist of but a single bar, and sliding upon a single rod, and, as thus made, would be within the scope of the invention. The latter feature would be the evident equivalent of the means mentioned in claim 1 of patent No. 661,497, for pressing the clothing, and for securing the hangers and clothing in one position upon the rod. In view of complainant's prior patent as hereinabove pointed out, the conception of such means was not new at the date of the invention in suit. Therefore the latei patent does not disclose patentable invention, the presumption of novelty having been overcome.

A fair preponderance of the evidence shows that the infringement was jointly committed by the defendant corporations—one as the manufacturer, and the other as a seller to the retail trade. The proofs show that the individual defendant was managing agent and principal stockholder of both corporations. That he personally directed the infringement is not controverted.

My conclusion is that the complainant is entitled to the relief indicated in the foregoing decision, namely, a decree against the defendants for an injunction and for profits and damages as to claim 3 of patent No. 604,346, during the time of the infringement of the prop feature of the patent, as hereinbefore indicated, and claim 4 of patent No. 642,075. As to patent No. 661,947, the complaint is dismissed. The complainant being successful in the litigation as to two of the patents, and unsuccessful as to the third, two-thirds of his costs may ·be taxed against the defendants, and complainant

may be decreed to pay one-third of defendants' costs. Authority to apportion costs in the manner stated may be found in Tesla Electric Co. v. Scott (C. C.) 101 Fed. 524.

So decreed.