UNITED SHIRT & COLLAR CO. et al. v. BEATTIE et al.

(Circuit Court of Appeals, Second Circuit. October 18, 1906. On Rehearing, January 30, 1907.)

No. 219.

1. PATENTS—ANTICIPATION.

A patent for a successful machine is not void for anticipation, because a prior machine intended for a different purpose may possibly be capable of use as an inefficient substitute for the later machine.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 66–72.]

2. SAME—INVENTION.

The conversion of an abandoned machine, which was a failure, into one which is operative and successful, by the introduction of new and ingenious features, however simple, constitutes invention, which may be protected by a patent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 73.]

3. SAME—ANTICIPATION—SUFFICIENCY OF PROOF.

A patent will not be held void for anticipation by an unpatented machine on the oral testimony of witnesses, the accuracy of which depends upon their unaided recollection of events which occurred 25 years previously, unless it is exceptionally clear and convincing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 78.]

4. SAME—PERSONS ENTITLED TO PATENT AS INVENTORS.

The right of one who conceives an invention to patent the same as the sole inventor is not lost because he lacks the mechanical skill to embody his invention in a machine, and employs another to construct such machine.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 68, 118, 125.]

5. SAME—INFRINGEMENT—SUFFICIENCY OF PROOF.

A decree for infringement of a patent will not be reversed on appeal, because the proof shows that the infringing machine was sold by a concern doing business under a different name and style from that of the partnership of defendants as alleged in the bill, where it also fairly shows that

the defendants were the proprietors of such concern, and the fact that they made the sale was not contested in the trial court.

**6. SAME—INVENTION AND INFRINGEMENT—FOLDING MACHINE.**

The Pine patent, No. 645,871, for a machine for folding the edges of blanks for making cuffs, collars, and like articles, was not anticipated in the prior art, and covers a true combination, although of old elements, which discloses invention; also *held* valid as against the claim that the patentee was not the inventor, and infringed, as to the first four claims.

Appeal from the Circuit Court of the United States for the Northern District of New York.

On appeal from a decree of the Circuit Court for the Northern District of New York holding valid and infringed the first four claims of letters patent No. 645,871, granted March 20, 1900, to the complainant, United Shirt & Collar Company, as assignee of James K. P. Pine, the inventor, for an improvement in machines for inturning the edges of collars, cuffs and like articles. The application was filed October 3, 1894. The other complainant, Reece Folding Machine Company, is the sole licensee and is engaged in making and leasing machines under the patent. The defenses in the Circuit Court were lack of novelty and invention, prior use, patentee not sole inventor and non-infringement, particularly of claim 4. The assignment of errors present the same questions in this court.

The opinion of the Circuit Court is reported in 138 Fed. 136.

George A. Mosher, for appellants.

E. H. Brown, for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The Pine patent relates to improvements in machines for infolding the edges of cuff blanks by which the infolds are formed in the blanks and are pressed with the fabric folded back on itself by the combined action of the support on which the blanks are placed, a templet defining the form of the blanks, and infolders actuated to carry the subtending edges of the blanks inwardly or over the defining edges of the templet. The infold thus formed is fixed in the blanks by pressure between the support and the infolders before the templet has been removed and the infolders withdrawn from the folded edges of the blanks. Two blanks are then placed together with the folded over edges concealed between them and united by a line of stitching along their folded edges, the stitching being done, of course, on another machine. The patented device may be used not only for folding cuffs but for collars and other similar articles.

Five pages of drawings containing seven figures, illustrating the machine in its minutest details, accompany the description. The claims involved contain, substantially, the same elements. The first claim which is a sufficient exemplification of the others is as follows:

"(1) In a machine for infolding cuff-blanks or analogous articles, the combination of a support for the blanks, a templet having expanding and contracting plates, edge portions of which are adapted to bear directly upon the blanks upon said support, and within edge portions of the blanks, infolders constructed to move inwardly and outwardly whereby the edge portions of the blanks may be folded over the edge portions of the templet, and means whereby the folds of the blanks may be pressed between the support and the infolders after withdrawal of the plates of the templet from the folds and thereby fixed with a sharp fold."

The combination here claimed contains the following elements in a machine for infolding cuff blanks:   (1) A support for the blanks. (2) A templet, having expanding and contracting plates with edge portions bearing directly upon the blanks within the edge portions of the blanks.   (3) Infolders constructed to move inwardly and outwardly for folding the edges of the blanks over the edges of the templet.   (4) Means whereby the blanks may be fixed with a sharp fold by being pressed at the infolds between the support and the infolders after the templet has been contracted and withdrawn.   An analysis of the other claims is unnecessary, further than to say that the fourth claim is specifically limited to "means for forcing the bed against the infolders," whereas the other claims are broad enough to include means for forcing the infolders down upon the support.   The infolders of this claim are "constructed to move inwardly and outwardly on all sides simultaneously."

The operation of the machine is as follows:   A blank is placed on the bed, or support, and the templet is brought down on the blank with the expanding plates resting thereon.   By means of a lever these plates are moved outwardly over the blank.   The folders are then moved inwardly carrying the edges of the blanks over the outer edges of the plates.   The plates are then drawn out of the folds by reversing the lever.   By means of a foot treadle the support is forced up pressing the infolds between it and the infolders.   The templet is then raised and the infolders are moved outwardly leaving the blank smoothly and sharply folded on the support.   The patentee takes pains to explain, what the law probably implies, that the machine can be made applicable to folding square corners and blanks of other forms and that other, equivalent, means can be substituted for the pressing upward of the support without departing from the spirit of the invention.

We do not think that Pine has made a "pioneer invention," but we cannot resist the conclusion that he has made a valuable improvement, which, for the first time, placed in the hands of manufacturers of collars and cuffs a practical working device which does the work faster and better than previous devices.   Though not entitled to a broad range of equivalents the complainants are entitled to protection against one who has admittedly appropriated the identical combination of three of the claims in controversy.   Time will be saved if the concession be made at the outset that the elements of the claims, considered separately or in different environments, were, speaking generally, all old.   The question here is was the combination old?   That the claims cover a combination, and not an aggregation, we have no doubt, even though the operations of the separate elements do not synchronize.   Forbush v. Cook, 2 Fish Pat. Cas. 668, Fed. Cas. No. 4,931; Heath Cycle Co. v. Hay (C. C.) 67 Fed. 246; Int. Recording Co. v. Dey (C. C. A.) 142 Fed. 736, 744.

The patent chiefly relied on by the defendants is the one granted to George Boxley, January 29, 1878, No. 199,615.   The judge of the Circuit Court carefully considered this patent and the machine alleged to be built under it, and, as we agree, in the main, with his conclusions it is unnecessary to repeat what he has so well and care-

fully stated. The admission by the defendant that the Boxley patent does not disclose the fourth element of the claims as stated, supra, removes it at once from the list of anticipating references.

The Circuit Court did find, however, that the Boxley machine was capable of being used to perform this pressing operation by withdrawing and raising the templet and then extending the blades of the templet and lowering it upon the blades of the infolders still extended over the folded edges of the blank. Although such use was possible the court was not satisfied that the machine ever was so used and was of the opinion that it was not constructed for such use and if so used it would soon be worn out and destroyed. This view is, we think, as liberal for the defendants as the proofs warrant. The Boxley prior use has not been established beyond a reasonable doubt for the following reasons:

First. It is most improbable that a machine which could do the work of the Pine machine would be permitted to go out of existence when skillful men, knowing the needs of the business, were searching for such a machine.

Second. No writing supports the defendants' contention and human memory is not to be relied upon as to minute details of transactions occurring twenty-five years before. Keasbey & M. Co. v. Carey Mfg. Co. (C. C.) 139 Fed. 571, and cases cited.

Third. The omission of the pressing mechanism from the specification, which was prepared after the machine had been in operation and was well understood by the patent solicitor, is most significant, and the same is true of the 1882 patent to Boxley.

Fourth. The machine as constructed was not adapted to accomplish the pressing work, the edge portions of the templet plates, which were to force the infolders down upon the folded edges of the blanks, to be pressed between them and the bed, were thin and flexible and were supported far from their operative edges. In other words, they were wholly unsuited to do the heavy work of pressing the edge portion of the folded blanks.

Fifth. Various other matters of construction in the Boxley machine tend to strengthen the conclusion that it was not intended to accomplish the purpose of the Pine machine in the particulars under discussion and that it was incapable of being so used as a practical operative device.

Of course, if it be true that Boxley, even though ignorant of the fact, had previously made a machine capable of doing the work of the Pine device in the same way, the patent of the latter cannot be sustained. But, on the other hand, if Boxley intending to accomplish a different result ignorantly stumbled upon a structure which, in the light of Pine's achievement, can be distorted into a temporary and inefficient substitute for the successful machine, quite a different proposition is presented. If Pine did nothing more than take an old abandoned failure and, by the introduction of new and ingenious features, no matter how simple they may be, convert the rusty relic into a living machine which does the required work better, faster, cheaper than it was ever done before, he is entitled to the protection which his

patent is intended to give. Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Clough v. Barker, 106 U. S. 166, 1 Sup. Ct. 188, 27 L. Ed. 134. Pine seems to have added to the prior devices the one feature necessary to make the machine a marked commercial success.

The patents to Norris, No. 502,678, granted August 1, 1893, and No. 520,535, granted May 29, 1894, are exceedingly complicated and their operation is not made altogether clear by the experts or the models. It would seem, however, that the press plate of the Norris machine is not collapsible and that in drawing it out the folded blank will be disarranged. It also appears that the machine is incapable of folding and pressing the folds on all sides of the blank and that it is capable of acting only upon a limited variety of blanks.

The Rumrell patent, No. 64,038, granted April 23, 1867, for an improvement in machines for making book covers, belongs to a different art and fails to disclose the combination of the claims of the Pine patent in controversy. Assuming that Pine had knowledge of the complicated device of Rumrell and adapted it to do successful work in the collar and cuff industry we are by no means sure that the language of the Supreme Court in Potts v. Creager, supra, would not apply:

"It often requires as acute a perception of the relations between cause and effect, and as much of the peculiar inventive genius which is characteristic of great inventors, to grasp the idea that a device used in one art may be made available in another, as would be necessary to create the device de novo."

A mere mechanic could learn nothing from Rumrell which would enable him to construct the Pine machine. He might find some valuable suggestions for minor mechanical details, but not the combination which makes the Pine machine successful. The Rumrell specification says:

"The press plate so prepared is brought down again, and this time on top of the fold, which is thereby pressed to the cover, and, being covered with paste, will be firmly secured."

The pressure here referred to is apparently that imparted by the hand of the operator. This is not the action of the Pine structure where folds are pressed between the infolders and the support. Topliff v. Topliff, 145 U. S. 164, 12 Sup. Ct. 825, 36 L. Ed. 658. We have grave doubt whether the Rumrell device could without several important changes, be adapted even for inefficient use in the art of folding cuffs and collars.

The Wenstron patent, No. 298,643, granted May 13, 1884, for a hat rounding machine, belongs to an art still more remote, and, so far as we can see, is wholly irrelevant to the present controversy. It shows, what no one has controverted, that prior devices somewhat similar to the templet of the patent had been made to expand and contract.

The McKinney and Shippee patents (Nos. 485,130, 463,171, respectively) have only a remote bearing upon the question at issue. This may be demonstrated by quoting from the Shippee specification that portion which is said to approximate most closely the Pine combination. It is as follows:

"The folding plates having been closed, the operator with his left hand will pull the form-plate longitudinally out from between the folding and clamping plates and out from the edge folds of the blank or material just laid over it leaving the folded edges m¹ held clamped between the plates a and b where the folded edges are closely creased."

The foregoing are the principal patents relied on to defeat the patent in suit. If singly or combined they are ineffectual to accomplish this result the other patents in evidence, which are still more remote, will not aid the defendants. The Pine patent is for a combination and it is enough to say that this combination is not, in our judgment, disclosed by any of the prior patents in evidence.

It is alleged that one George A. Brockway made a machine prior to the date of Pine's invention, which was a complete anticipation at least of the combination of claim 4. The complainants assert that the Brockway machine was not made before, and even though it were so made the proof is insufficient to establish prior use. Upon both of these propositions the burden is on the defendants and it is enough to say that there is sufficient doubt as to the details and date of the Brockway machine to warrant us in rejecting it as an anticipation.

We have already adverted, when dealing with the Boxley machine, to the unsatisfactory character of testimony depending upon the unaided recollection of witnesses of events occurring years previous. Courts are loth to destroy a patent upon testimony so unreliable. It suffices to say that the defendants' testimony is neither clear nor convincing. We are in doubt as to its truth.

It is said that Garry J. Dormandy was the sole inventor or the joint inventor with Pine. The Patent Office, after full hearing, granted the patent to Pine which is at least prima facie evidence that he was the inventor. The court must be convinced by strong and satisfactory proof that Dormandy was sole or joint inventor before destroying the patent. Pine, having disclosed his invention to Dormandy, in the spring of 1893, and, having employed the latter as his machinist to construct the machine, the presumption is strong against Dormandy's contention that he supplied the brains which made the machine operative, especially after the Patent Office on interference had decided in favor of Pine and against Dormandy.

The question is at best a technical abstraction. No rights of rival inventors are involved, as the complainant, the Shirt & Collar Company, was assignee of both Pine and Dormandy, and that company, with full knowledge of the facts, took the patent, in accordance with what appeared to them to be the truth, in the name of Pine. A decision against Pine now will benefit infringers but will be no benefit to Dormandy. We think the testimony fails to establish the defendants' contention; on the contrary it shows that Pine first conceived the invention and employed Dormandy to carry it out. Read as a whole, in connection with the position, character and intelligence of the two men, respectively, as disclosed by the record, the history of the invention makes it quite clear that the inventive faculty was Pine's, the mechanical skill Dormandy's. "Every machine before it can be used must be constructed as well as invented. If one man does all the inventing and another does all the constructing, the first is the

sole inventor." Walker on Patents, § 46; Agawam Co. v. Jordan, 7 Wall. 583, 602, 603, 19 L. Ed. 177. We think the proof sufficient to connect the defendants with the machine known as "Complainants' Exhibit Defendants' Machine."

The bill of complaint is "against William Beattie and Walter J. Beattie, both citizens of the state of New York, jointly doing business under the firm name and style of William Beattie & Son, and having a place of business at Cohoes, in the said Northern district of New York." The answer admits this. On July 5, 1902, the machine in evidence was purchased and a bill rendered to the purchaser, which contains among other statements the following printed matter:

"Beatties' Machine Works. W. Beattie & Son. W. Beattie, W. J. Beattie. Cablegram 'Beattie.' Sole Manufacturers of Beatties' Patent Loopers, Cohoes, N. Y."

On July 17th Beatties' Machine Works acknowledged receipt of $380.44, the amount of the bill of said machine. It is true that this proof might have been more specific and probably would have been if the complainants had anticipated that an attack would be made upon it for the first time in the appellate court. It is asserted, and not denied, that throughout the entire litigation in the Circuit Court the exhibit in question was treated as having been sold by the defendants. The name "Beattie" appears six times on the bill-head and if the complainants had had the slightest hint that a distinction existed between "W. Beattie & Son" and "Beatties' Machine Works" they could have offered proof showing their indentity. We are of the opinion that the complainants made out a prima facie case. Hutter v. De Q. Bottle Co., 128 Fed. 283, 285, 62 C. C. A. 652.

It is conceded by the defendants that the machine referred to supra infringes the first three claims of the Pine patent. It is argued, however, that it does not infringe claim 4 for the reason that it does not employ "infolders constructed to move inwardly and outwardly on all sides simultaneously." This contention gives, we think, an unnecessary strict construction of the word "simultaneously," which means "at the same time," and if the infolders, at any time during the operation, move simultaneously they are within the claim, even though their respective movement may begin and end at different times. As is said by the complainants' expert:

"By the same continuous operation of the operating handle, the four infolders are simultaneously moved and continuously from start to finish. I do not understand, however, that the actual folding of each edge of the blank is performed in precisely the same time as the rest. The folding is, however, accomplished on all edges of the blank by the same operative movement of the single operative handle."

We are of the opinion that infringement of the fourth claim is established.

The decree is affirmed.

On Rehearing.

PER CURIAM. After careful examination of the questions presented at the reargument, we are constrained to adhere to our former opinion that the claims in controversy cover patentable combinations and are not for mere aggregations.