INTERNATIONAL TIME RECORDING CO. v. DEY et al.

(Circuit Court of Appeals, Second Circuit. December 5, 1905. On rehearing December 22, 1905.)

No. 180.

1. PATENTS—VALIDITY AND INFRINGEMENT—WORKMEN'S TIME RECORDER.

The Cooper patent, No. 528,223, for a workman's time recorder, which prints the time of his going in and coming out each half day on his individual card, was not anticipated in the prior art and discloses inven-

tion, being an improvement over the machines in previous use in important respects. The combinations shown are not, strictly speaking, of old elements, having important new elements, especially in the card feature, which enables the workman to see and verify his entry, and in the card receiver having movable abutments operated automatically by a time mechanism which renders it impossible to make an entry dating back to a half day which has passed; and the claims are not confined to the identical mechanism shown in the specification. Also *held* infringed.

**2. SAME—INFRINGEMENT—CHANGE OF FORM.**

Identity of detail in a mechanical combination is not necessary in order to constitute infringement, which cannot be avoided by changing the form and shape of the elements entering into the combination, so long as the essential features are appropriated and accomplish the same result in substantially the same way.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 371-373.]

Appeal from the Circuit Court of the United States for the Northern District of New York.

This is an appeal, by the defendants, from a decree of the Circuit Court for the' Northern District of New York, sustaining eight claims of letters patent No. 528,223, granted October 30, 1894, to D. M. Cooper for a workman's time recorder.

In the specifications the inventor says:

"My present invention relates to machines known as workmen's time recorders, and it has for its object to produce a form of apparatus by means of which a workman personally records upon his individual card or time check the time when he enters or leaves the factory, or both; and said card being adapted to receive marks indicating the exact number of hours he was present at the factory during a given period, say one week, the amount of wages due him at the end of this time can be readily computed without the necessity heretofore existing, of transcribing from a continuous strip of paper several entries in order to compute the amount of wages.

"In carrying out the invention I provide a time stamp embodying a suitable printing mechanism and adapted to print upon a suitable check or card the exact time of the operation of the stamp, and the relative positions of the marks made upon the card by the stamp indicating whether the workman is entering or leaving the factory and also the day and which portion of the day, that is, whether in the forenoon or in the afternoon, and it consists in certain improvements in construction and combinations of parts, all as will be hereinafter described and the novel features pointed out in the claims at the end of this specification."

The machinery for carrying out the invention is elaborate and complicated and is illustrated by three sheets of drawings containing nine figures, the important parts being pointed out by over 80 reference figures.

After a minute discription of these drawings the specification continues:

"In practical use the apparatus just described is placed at the entrance to the factory and two card racks are used as in Fig. 1, one on the left indicated by 70 being adapted to contain the workmen's cards while they are out of the factory, and the one 71 on the right, while they are in the factory. When the workman enters the factory in the morning, he takes his time card from the rack 70, inserts it in the card receptacle of the stamp, the abutment 40 at the bottom being at such an elevation that the horizontal division of the card indicating the forenoon of the proper day is in line with the centers of the marking wheels and opposite the hammer, and he then moves the lever 83 to the right or toward the word 'In,' bringing the vertical column at the left in line with the hammer, and then moves the lever 28 upward causing the pawl 29 to slip over the arm 30 of the hammer frame and as the lever is moved down, said frame will be drawn back and then released stamping the time on the card and ringing the bell or alarm. The card is then removed and placed in the rack 71. When the workman goes out at

142 F.—47

noon, he removes his card from the rack 71, inserts it in the card receiver, pulls the lever 83 to the left, toward 'Out,' and operating the lever 28 stamps the time on the card, as before, and then places the card in rack 70. The mechanism actuating the abutment 40 is operated at half-past twelve, and said abutment raising brings the 'p. m.' space on the card, in line with the marking wheels so that when the workman returns he removes his card from the rack 70, stamps the time thereon, as described, and places it in the rack 71, and at night, when he leaves the factory, he stamps his card and returns it to rack 71, leaving behind him an accurate record of the time he has been at work, which may be transferred to a record book if desired at the end of the day or at the end of the week, and the card will indicate the full number of hours he has worked and the amount of wages due him may be at once computed and paid him upon presenting his card to the cashier.

"By the use of this apparatus the necessity, heretofore existing, of transcribing a large number of figures from a tape to a book and the employment of a separate key for each workman is obviated and a single apparatus will serve for any reasonable number of employés, the record being such that there is no opportunity for dispute.

"It will be noted that as the abutment in the card receiver moves progressively toward the mouth of the receiver and causes the stamp to mark at the top of the card first, there is no opportunity for a workman who has been absent a day to fraudulently stamp the card in the space devoted to the time he was absent, because the abutment prevents its insertion far enough to bring a previous marking space in line with the marking wheels.

"As stated, it is immaterial as far as the broad features of the invention are concerned what particular kind of time stamp or what means for limiting the insertion of the card be employed and various modifications of the devices for causing the relative movements of the card and time stamp will readily occur to those skilled in the art.

"It will be understood that the abutment 40 could be actuated away from, instead of toward, the stamping wheels and the cards could have the days of the week reversed from the position shown, but this would necessitate the employment of additional means to guard against the cards being fraudulently marked after the abutment had moved to allow the appropriate subdivision on the card to pass the marking wheels.

"Where the term 'time stamp' is used in the claims it is to be understood in the absence of further limitations, to mean the hour and minute marking wheels and devices for marking an impression or imprint upon a card or slip placed between them.

"The abutment constituting the bottom of the card receiver need only move relatively to the marking wheels, and it is immaterial whether or not it is movable relatively to the sides or edges of the card receiver or holder."

The claims involved are as follows:

"2. In a time recorder, the combination with a time stamp and operating devices therefor, of a card guide or receiver adjustable relatively to the stamp in one direction and a movable abutment or stop for engaging a card automatically movable relatively of the stamp in another direction, substantially as described.

"3. In a time recorder, the combination with a time stamp and operating devices therefor, of a card guide or receiver, an abutment limiting the movement of the card relative to the time stamp and time mechanism actuating said abutment intermittingly, substantially as described.

"4. In a time recorder, the combination with a time stamp and operating devices therefor, of a card guide or receiver, an abutment limiting the movement of the card relative to the time stamp, and intermittingly operated mechanism for actuating the abutment, substantially as described.

"5. In a time recorder, the combination with a time stamp and operating devices therefor, of a card guide or receiver, an abutment limiting the movement of the card relative to the time stamp, and intermittingly operated mechanism controlled by a time movement for actuating said abutment, substantially as described.

"7. In a time recorder, the combination with a time stamp embodying marking wheels, and a time movement, of a card guide or receiver, an abutment limiting the movement of the card relative to the marking wheels, actuating mechanism for moving the abutment and controlled from the time movement of the stamp, substantially as described.

"8. The combination with the time stamp embodying marking wheels, and a time movement, of a card guide or receiver, an abutment limiting the movement of the card relative to the marking wheels, a cam operating the abutment, and a motor for moving the cam, controlled by the time movement, substantially as described.

"10. The combination with the time stamp embodying marking wheels, and time movement operating them, of the card receiver open at front and rear, and movable relatively to the marking wheels, the movable abutment at the bottom of said receiver, actuating devices for moving said abutment intermittingly toward the marking wheels, a time mechanism for controlling it, a movable hammer co-operating with the marking wheels, and operating devices therefor, substantially as described.

"12. In a time recorder, the combination with a time movement, a separate motor mechanism controlled thereby, a marking stamp operated by the time movement, and a movable abutment operated toward said marking stamp by the motor and serving to limit the insertion of a card in the stamp, substantially as described."

The defenses in the Circuit Court were lack of novelty and invention, anticipation and non-infringement. The failure of that court to sustain these defenses is now duly assigned as error.

F. P. Warfield, for appellant.

Drury W. Cooper, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge (after stating the facts). A description of the complicated mechanism of the patent in all its minute details, even were it possible to give such a description in the absence of drawings, will serve no useful purpose.

## The Prior Art.

Prior to the Cooper invention, in May, 1894, there had been a number of time recording machines upon the market, several having achieved considerable popularity.

One of the most successful was a machine which recorded automatically the time of the workman upon a single strip of paper located within the machine, the record being transcribed from this strip to the time book. Each workman was provided with a key having a number engraved on its ward so that in operation the workman's number and time were printed on the tape.

An improvement was made by the defendants who constructed a machine provided with a dial having identifying numbers printed on its periphery and a pointer which the workman carries to the number designated; he then pushes the pointer into the number and the record is instantly made on the tape. In this way each workman has registrations localized on a single line instead of being entered promiscuously as theretofore. In none of these machines were the workmen provided with individual cards on which the time record was automatically printed so that he could see and verify the registration the moment it was made.

The prior machines were easily disarranged, their records were indefinite, confused and incomplete, requiring selection and transcription in the time book and the employment of a competent copyist for this purpose, and they were unfair to the workman, as the registration was hidden from view. They were also unfair to the employer as they could be "beaten" by a shrewd and unscrupulous employé.

The criticisms of the last two paragraphs are inapplicable to the "Dey Dial Machine" except so far as they may apply to a structure which registers on a sheet of paper inside the machine. The Dey machine was a successful and popular embodiment of that type of machine.

### The Cooper Patent.

These were some of the defects which Cooper undertook to remedy and which he succeeded in remedying to a very considerable extent.

His plan is to provide each workman with a card bearing his name and number so arranged that the exact time of his going in and coming out of the factory will be printed each day.

In order to accomplish this result Cooper provides a clock mechanism and a time stamp embodying suitable printing mechanism combined with a card receiver which brings the card into such a position that the type printing wheels will inevitably print the correct time in the proper spaces upon the card. At the bottom of the receiver is a movable abutment on which the card rests when dropped in by the workman. This abutment is raised intermittently the distance between the centers of two of the horizontal spaces on the card "thereby decreasing the depth of the card receiver, every twelve hours, or half day, until Saturday night and then, on Sunday morning, leaving it of maximum depth so that the card may be inserted nearly its full length, in position to print on the top line." This is accomplished by an ingenious combination between the clock mechanism, the printing mechanism and the receiver, the novel element being the adjustable card receiver and the means employed by which it is brought into correct relations with the other mechanisms so as to produce a simple, accurate and reliable time recorder.

### The Claims in Issue.

The invention is fully secured by the claims in question.

The first claim involved (No. 2) is for the combination, in a time recorder, of a card guide or receiver, adjustable relatively to the stamp in one direction, and a movable abutment or stop for engaging a card automatically movable relatively to the stamp in another direction, with a time stamp and operating devices therefor. In other words, it is for a combination, in a time recorder, containing the following elements:

First.—A time stamp.

Second.—Operating devices therefor.

Third.—A card receiver adjustable relatively to the stamp in one direction.

Fourth.—A movable abutment or stop for engaging a card automatically movable relatively of the stamp in another direction.

Claim No. 3 is limited to an abutment actuated intermittingly by the time mechanism.

Claim No. 4 is the same as No. 3, except that by the omission of the word "time" before the word "mechanism" any intermittingly operated mechanism is within its terms.

Claim No. 5 is limited to such mechanism controlled by a time movement.

Claim No. 7 is more specific and covers the means described in the specification for the practical operation of the combination. The first element as above stated—the time stamp—must, in order to be covered by this claim, be a time stamp "embodying marketing wheels." The second element is limited to a time movement, or clock mechanism, and the fourth element to mechanism for moving the abutment which is controlled from the clock.

Claim No. 8 is limited to an abutment operated by a cam and is, therefore, not infringed by the defendants' machine introduced as "Complainant's Exhibit No. 3-A."

Claim No. 10 is limited to a card receiver open at front and rear, having the abutment, movable towards the marking wheels, at the bottom and a movable hammer co-operating with the marking wheels.

Claim No. 12 is for a combination having for its elements a time movement, a separate motor mechanism controlled thereby, a marking stamp operated by the time movement and a movable abutment operated by the separate motor.

## Prior Patents.

The defendants insist that these claims are anticipated or invalidated for lack of invention by the disclosures of the prior art.

In 1858 Stanislaus Fournier received a patent, No. 20,786, for a register to be attached to clocks to show the faithful attention, or neglect, of persons keeping watch during the night. It shows a stationary card and a movable marking device which is raised day by day by a cam and supposed means for operating this cam, which is controlled by the clock mechanism. The registration is made by the watchman giving a slight tap on a button outside the frame of the clock which presses the needle point of the index bar into the card, making a small hole therein. The presence or absence of these holes will indicate the fidelity or neglect of the watchman.

There is no evidence that Fournier's device ever went into practical operation. This fact would not be of serious importance if the specification described an operative structure, but whether it does or not is, to say the least, exceedingly doubtful. In any view the apparatus would be utterly useless in registering the coming and going of a large number of workmen. It was intended for a different purpose, and operated, if at all, upon a different principle. It certainly does not anticipate and we are of the opinion that it would not suggest the Cooper invention to the skilled artisan.

The patent granted to George W. McAninch, No. 510,811, in 1893, was for a workman's time recorder.

The inventor says:

"My invention relates to improvements in that class of machines which are adapted to be operated by the individual employés in shops, factories and the like, whenever such employés begin or leave off work, and which is adapted to keep an accurate record of the time of each employé and produce the record on the time sheet in such a manner that the sheet may be preserved and the total time of each workman quickly and accurately footed up. The machine is adapted to be operated, as above remarked, by each workman, and the workman therefore cannot dispute the record."

The record here was made by puncturing holes in the time record sheet which was wound upon rollers. A workman on entering, places his individual check upon a hook, thus forcing a pointer or needle into the roll, the location of the hole indicating the time of day when it was made. The withdrawal of the check on leaving the factory causes another registration to be made. This record was hidden from view inside the clock case and depended for its accuracy upon the correct ruling of the paper and its perfect alignment upon the drums. If the pin holes were accurate a correct time schedule could subsequently be figured out.

Whether a machine made in accordance with the directions of this patent ever did, or ever could, operate successfully is not clear from the proof, but assuming that the patent describes an operative device it is entirely clear that it is not the device of the Cooper patent. It was to remedy the obvious defects of such a structure that Cooper made his invention.

The English patent to Wirth, No. 1707, dated April 30, 1879, is for "Improvements in Workmen's Checking Apparatus." It shows a machine operated, in connection with other apparatus, by a turnstile through which the workmen pass, the registration being made upon a sheet similar to that shown in the Fournier patent.

The specification, however says:

"A drum can be used to carry the diagram sheet, which is divided by horizontal lines into hours and parts of hours, and by vertical lines for the number of workmen, these numbers being the same as those on the face plate."

The complainant's expert, in comparing this machine with the machine of Fournier says:

"In the Fournier machine and in the Wirth machine alike, punch marks in one line represent hours of the day if made within their proper rulings, while punch marks in another line indicate one other kind of information, which in the Fournier machine, would be interpreted as successive days of the week, while in the Wirth machine they mean different workmen. The Fournier machine is capable of registering for one man for one week, while the Wirth machine is capable of registering for 24 men for one day."

Like the devices heretofore considered, its accuracy depends upon the sheet being positioned correctly to receive the holes made by the punch. It would seem, also, that in order to insure the proper working of the device and guard it from dishonest manipulation it must be inclosed in a case.

The German patent, No. 33,885, dated November 9, 1885, for a "Workman's Register" was issued to Richard Burk, the same inventor who, through Wirth his solicitor, secured the patent just previously under consideration.

The specification says:

"In registering with this apparatus weekly (or other time) tickets, Fig. 5 are used, divided by lines into days, hours and parts of hours, so that the length of the ticket displays one work day, and the desired number of days is divided off by horizontal lines. Such tickets are distributed to the individual workmen, after a number or name has been marked on the back. * * * The apparatus forms a 'ticket-in-the-slot' concern mounted on a lock-box which is provided with two drums, a and b, borne side by side, by whose rotation the ticket, on being inserted in the slot c, is pulled in and guided into the box, on which occasion the registering sign is impressed upon it."

The registering sign is a mark made by a punching pin in the paper, giving a more or less accurate result according to the relative position of the punch and the proper space to be punched, but liable to fraudulent manipulation by the workmen and to be unreliable through carelessness.

The tests made by complainant's expert, as illustrated by an exhibit, may give an exaggerated idea of the machine's inefficiency, and yet it cannot be doubted that the defects pointed out are substantial and not imaginative. It is possible that the defendants' model might have done better work in more friendly hands, but even a layman can perceive that perfect accuracy cannot be expected of a device so construcied.

The English patent to George Williams Parkes, No. 7,367, dated May 20, 1887, is for "Improvements in Automatic Time Keeping Apparatus." This patent is chiefly noticeable for showing a time stamp for registering the time approximately, when the workmen enter the factory to begin or to resume work.

W. H. Martin, in 1892, also received a patent, No. 485,639, for a time stamp which registers on a card. The complainant owns this patent but has never manufactured under it for the reason that "the arrangement of the record on the card was not automatic" and also because the structure was not strong enough to stand the ordinary wear and tear of actual use. The gauge or abutment was movable by hand and was in no way moved or controlled by the clock mechanism.

We have thus considered all of the patents principally relied upon by the defendants. We do not think that any one of them anticipates or so limits the field that the advance made by Cooper was attributable only to the skill of the calling. Furthermore, we are of the opinion that the combined knowledge of them all would not have enabled the skilled mechanic to construct the patented machine.

A fair deduction to be drawn from the prior art is that if a mechanic were requested to construct a card machine on the card of which the workmen's time is accurately printed and if he were given the patents above-named plus the card receiver with the movable abutment automatically controlled, he might be able to produce the Cooper device. But to conceive the idea and then embody it in a combination which produces a machine which for accuracy, convenience, celerity and fairness to employer and employed shows marked improvement over anything preceding it, required an exercise of the inventive faculties, though not, perhaps, of the highest order. Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586; Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Cimiotti Co. v. Fur Co., 198 U. S. 399, 408, 409, 25 Sup. Ct. 697, 49 L. Ed. 1100; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658.

## Aggregation.

Strictly speaking the combinations are not, as we have seen, of old elements, as the card receiver with movable abutment possesses important features not found in the prior art, but conceding, for the moment, that all the elements, when segregated, are old, it cannot be denied, we think, that the combination is not only new but that it produces a new result or, at least, an old result in a better way than any device which preceded it. The elements of the combination so act that each qualifies every other and the new result is due to their cooperative action. Remove one and the machine becomes inoperative; it fails to produce the desired result. It is true that these elements do not act synchronously, but this is not necessary, simultaneous action being frequently absent from patentable combinations. National Cash Reg. v. American Cash Reg. 53 Fed. 367, 3 C. C. A. 559; Heath Cycle Co. v. Hay (C. C.) 67 Fed. 246; Forbush v. Cook, 2 Fish Pat. Cases, 668, Fed. Cas. No. 4,931.

## Infringement.

We think there can be no doubt that the defendants' structures infringe the claims in issue except that Exhibit 3-A does not infringe the eighth claim.

Under the construction which must be given to the claims, which does not confine the various elements of the combination to the identical mechanism shown in the specification, infringement is clear, whether we consider the testimony of the expert for the complainant or the expert for defendants. Infringement cannot be avoided by changing the form and shape of the time stamp, the clock mechanism, the receiver, the abutment and the means for connecting up and actuating the various parts, so long as the defendants appropriate the essential features of the combination and accomplish the identical result in substantially the same way. They employ a time recorder which registers upon the individual card of each workman the time of his coming in and going out. This card is placed by him in the receiver, is stamped by his action and removed by him so that he has full opportunity to verify the record made by the machine. So far, then, in operation and result the machines are identical. The defendants' recorder has the clock mechanism and the stamp mechanism, with a rod, in all respects similar to rod 23 of the patent, for transmitting a time controlled movement to the time stamp mechanism; it has the card receiver open at front and back with the movable abutment limiting the movement of the card relative to the time stamp and it has the connection with the clock motor, by means of a power shaft and beveled driving gear, which operates a cam giving the necessary intermittent motion to the movable abutment. The defendants' card receiver is adjustable relatively to the stamp by a lever, the handle of which is operated by the workmen precisely as in the Cooper device.

In short, the infringing devices have appropriated every element of the patented combination, the differences being of form and not of substance. These consist of mechanical changes and the substitution of obvious equivalents well known to every skilled workman. Identity

of detail in a combination, like the one under consideration, is not necessary in order to constitute infringement. The patentee took pains to point out that "the specific construction of the mechanism shown * * * is not essential." This was an unnecessary precaution; the law gave him ample protection in this regard. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935.

As we understand from the testimony of defendants' expert that noninfringement is based upon the hypothesis that the claims are to be strictly confined "to the particular construction shown and described in the patent," it seems unnecessary to pursue the subject further.

We have not deemed it necessary to refer at length to defendants' Exhibit No. 2.

The lesson to be learned therefrom is not new. A claim for a combination is not infringed by one who omits one of the elements of the combination, but it is a far cry from this premise to the conclusion that the claims are void for lack of patentability.

It follows that the decree should be affirmed.