## TRICO PRODUCTS CORPORATION v. E. A. LABORATORIES, Inc.

### No. 103.

Circuit Court of Appeals, Second Circuit.

June 18, 1934.

See, also, 49 F.(2d) 404; 71 F.(2d) 680.

Prindle, Bean & Mann, of New York City (George T. Bean, of New York City, and Barton A. Bean, Jr., and Edwin T. Bean, both of Buffalo, N. Y., of counsel), for appellant.

Duell, Dunn & Anderson, of New York City (Holland Duell and David S. Kane, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This appeal is a test of the infringement of patents No. 1,434,655 (claims 1, 2, 3, 4) and No. 1,391,887 (claim 4), held not to be

infringed by appellee's manufactured horn in the court below. The patents are for suction operated automobile horns. They provide for a horn having a chamber with an opening therethrough and connecting with a horn bell, a valve for opening and closing the opening, and a valve or air withdrawal port of smaller size than the opening, to which the suction is applied. A resilient means tends to maintain the valve on its seat and resists withdrawal of it from the seat, so that the operation is that as suction is applied to the air withdrawal opening, the valve is opened and atmospheric air is induced to enter the horn bell in a column. Because of the larger opening through the valve than through the air withdrawal opening to which suction is applied, more atmospheric air in a given period of time may pass the valve than may be withdrawn through the air withdrawal opening, and consequently, as the valve is opened, the atmospheric air rushing in from the bell of the horn will break the suction back of the valve or more nearly return the condition there to atmospheric pressure, whereupon resilience returns the valve to its seat and the operation proceeds with quite rapid vibration of the valve inducing the air flow into the horn and interrupting that air flow, with the consequent production of sound. It is this unusual sound thus produced that has given the horn its commercial success.

The appellee's horn is operated by suction from the intake manifold of an internal combustion engine. There is a chamber formed by an annular front plate and a back plate. In the chamber are the valves formed by the two resilient disks or diaphragms and a resiliently mounted valve supported and resiliently mounted by the stem and a resilient spring. When the pipe to the intake valve is opened and air is withdrawn through the back portion of the chamber through an opening, after a substantial subatmospheric condition is built up, it causes atmospheric air to force the valve part away from disks against the tension of the spring, and air rushing into the back of the chamber through the large central opening of the disks comes in faster than the substantial subatmospheric condition can be maintained, due to the restricted opening in comparison to the opening in the disks, causing the resilient mounting of the valve part to snap the valve closed; and then the operation is rapidly repeated.

The claims read:

"1. The combination with the intake manifold of an internal combustion engine comprising a chamber, a resiliently mounted valve in the chamber adapted to open and close for production of sound and connections from the said manifold to the said sounding device for operating the valve, said connection having a smaller passage therethrough than in the exposed area of the valve when open.

"2. A sounding device comprising a chamber, a peripherally held disk closing the chamber, said disk having an opening therein intermediate its edges and means against which the sides of said opening abut when the said disk is at rest and forming a seat therefor, and an inlet to said chamber for supplying suction thereto for the purpose described, said inlet being of small diameter in comparison with the disk opening.

"3. A sounding device comprising essentially a chamber at least one wall of which embodies a resilient disk, said disk having an opening therein intermediate its edges, a valve formed about said opening and a seat for said valve and means for forming a partial vacuum in said chamber to unseat said valve."

Claim 2 differs from claim 1 in that the inlet is of small diameter in comparison with the disk opening, and claim 3 has a means for forming a partial vacuum in the chamber to unseat said valve.

Patent No. 1,391,887 was filed two months after the patent just referred to, on a more modified form of device, but it embodies the same general principle. There is a thin vibrant disk in this device having a central opening or aperture which is bordered by an annular member having a cylindrical flange which serves as a valve seat. A spring arm carries a screw which extends from the back of the disk through the disk and in front of the disk and supports a valve. The screw is provided with a nut which upon movement of the valve contacts with the forward end of an adjusting screw. Upon continued movement of the disk rearwardly, the disk and its seat will move away from the valve thereby opening the aperture. An operation similar to that discussed in the previous patent takes place; air being induced to enter the bell of the horn to flow through the aperture to the rear of the disk until it raises the pressure therein sufficient to permit the resilience of the parts to return the valve to closed position, thus interrupting the column of air, and, as this takes place in rapid vibration, an unusual penetrating sound is produced.

Claim 4, in suit, reads:

"4. In a sounding device, means for peripherally supporting a vibrant disk, means

for applying suction behind said disk, said disk having an opening therein and a closure for said opening adapted to act together with said opening as an air valve, said closure being resiliently carried so as to modify the vibrations of air passing through said valve."

The appellant's contention is that, while it has been old to produce sound in warning signals for automobiles by successive blasts of air from a source of air under pressure, the production of sound in automobile warning signals by successive withdrawals of bodies of air from the atmosphere and the successive interruption of such withdrawals is new and productive of a new type of signal which has been introduced by this patent.

It is within the scope of patent No. 1,-434,655 to resiliently mount the valve parts and place them entirely within the back portion of the chamber as the appellee has done, the result is the same, as in either case there is a chamber, a resiliently mounted valve in the chamber adapted to open and close for the production of sound and a suction connection having a smaller passage therethrough than the opening through the valve and that is within the claims. The claims of both patents are not limited to a specified positioning of the valve parts, but broadly cover the combination of elements set forth. The basic thought of the patent is to produce the sound by rapid interruptions in the air current.

The defense asserts that the appellee's structure does not embody the principles of the patents in suit in that the member closing the aperture in the disk or diaphragm in the appellee's structure is on one side of the disk or diaphragm and in the patent in suit it is on the other side. Infringement is not escaped by the mere reversal of parts which serve to accomplish the same results or functions. Wachs et al. v. Balsam, 38 F.(2d) 50 (C. C. A. 2); Telescope Cot Bed Co. v. Gold Medal Camp Furniture Mfg. Co., 229 F. 1002 (C. C. A. 2); International Time Recording Co. v. Dey, 142 F. 736 (C. C. A. 2).

This record demonstrates that there was in commercial use no valve type suction operated horn until the appellant's and later the appellee's appeared.

To avoid infringement of the claims of the patent sued on, appellee contrasts the seating of the valve during the operation of the horn in appellant's horn with the prevention of the seating by the presence of a hydrostatic paradox in appellee's commercial structure. The theory of the principle of appellant's patent is that the valve seats rapidly and intermittently during the operation of

the horn, whereas the theory of the paradox is that during the operation the valve would remain off its seat and in a state of flutter. It was found impossible to demonstrate such a paradox with a device having the proportion of appellee's horns and the fact that the appellee did not demonstrate the paradox with a model identical in construction with its horn the appellant now claims is forcible evidence that such device could not embody the principle claimed. On the other hand, the appellant gave practical demonstration at the trial proving that the appellee's horn valve seated during operation.

The court below held that the appellee's horn did not have a resiliently mounted valve, but we are of the opinion that a resiliently mounted valve is a valve placed in a suitable support in such manner that it will return to and resume the original position. Appellee's valve meets this limitation, for it seats, as that term is commonly understood. Appellee says that the closure is on the high-pressure side of the device in the patent in suit and on the lower pressure side in the appellee's horn. But the closure of the patent in suit can be considered to be a moving diaphragm which would be upon both the high and low pressure side of the horn or could equally well be considered to be one upon the low-pressure side of the horn. The claims of this patent in suit relied upon are not limited in the positioning of the closure member, but are drawn to comprehend the valve structure as a whole, and the appellee's horn reads directly upon the claims. It has the same type of valve structure as that shown by the patents in suit. It has the same combination as called for by the claims 1, 2, 3, and 4 of the first patent.

The nearest of the prior art referred to is the Shaw patent No. 212,157, granted in 1879. It is a patent of a nonanalogous art, and is different in structure from that disclosed by the patent in suit. It does not show in any way the combination of the claims in suit. It does not contain a valve adapted to open and close for production of sound. In the Shaw patent, a member interrupts the air stream, but, due to the fact that it is not a perforated diaphragm, the only production of sound is that emitted from the mouthpiece and caused by the vibrating diaphragm.

Patent to Teste & Malivert No. 1,281,877, shows a compressed air type of horn in which the diaphragm is forced away from its seat under great pressure. It is different from the patents in suit, which were allowed over this reference.

The Pierson patent, No. 961,158, shows a reed horn that would be inoperable for use with the suction source of an automobile due to the wide variance in the amount of suction. It would not operate by successively interrupting subtractions of volumes of air as do the patents in suit. The reed merely vibrates in the flowing air stream.

The German patent to Rover, No. 231,085, is operated by pressure.

These and the others cited do not show a construction which embodies a new principle as in the patents heretofore explained. No prior art suggests what this inventor accomplished.

As stated, patent No. 1,391,887, earlier in issue, was later in application. It is a general idea of the disclosure of the first application, and a majority of the court think it should be narrowly construed. It depended upon the unseating of the closure carried by the disk itself; closure and disk were structurally a single member and moved as one until the valve nut struck its abutment. The appellee does not reproduce this, and claim 4 of this patent is not infringed.

The decree will be modified; patent No. 1,434,655 is held valid and infringed as to claims 1, 2, 3, 4, and patent No. 1,391,887 is held not to be infringed.

Decree modified.

