STANDARD TYPEWRITER CO. v. STANDARD FOLDING TYPEWRITER SALES CO. et al.

(Circuit Court of Appeals, Second Circuit. April 29, 1915.)

No. 47.

PATENTS ☜328—ANTICIPATION—TYPEWRITER.

The Rose patent, No. 754,242, for a typewriter, claims 1 and 5, the distinguishing feature of which is the provision of means whereby the platen and its carriage may be folded into compact relation to the banks of keys, giving the machine a compact form for purposes of transportation, *held* void for anticipation by the device of the Carmona patent, No. 661,849.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon an appeal from a decree entered in the United States District Court for the Southern District of New York on December 2, 1913, which refused an injunction to the Standard

Typewriter Company, plaintiff, restraining the Standard Folding Typewriter Sales Company et al., defendants, on charges of infringement of claims 1 and 5 of letters patent of the United States, No. 754,242 and claims 1, 2, 3, 4, 5, 6, and 7 of letters patent of the United States, No. 948,553.

The Standard Typewriter Company is a corporation organized and existing under the laws of the state of New York. The Standard Folding Typewriter Sales Company is a corporation also organized and existing under the laws of the state of New York. James A. Whitcomb, Eugene E. St. Germain, and Arthur W. Buckwell are citizens of the United States, and of the state of New York, and each of the defendants resides in the Southern District of New York and has a regular and established place of business in said district.

Patent No. 754,242 was granted to F. S. Rose on March 8, 1904, for a typewriting machine. And patent No. 948,553 was granted to F. S. Rose, deceased, G. F. Rose administrator, on February 8, 1910. The first of these patents was, through mesne conveyances, assigned to the complainant, and by assignment complainant also claims the exclusive right to make, use, and vend the inventions and discoveries patented in and by letters patent No. 948,553. A suit was brought to restrain the alleged infringement of both patents. A motion for a preliminary injunction was made and was granted as to claims 1 and 5 of patent No. 754,242 but was denied as to patent No. 948,553.

An appeal was taken to this court from an order granting the injunction as to the first patent and the order granting the injunction was affirmed. 181 Fed. 500. Subsequent to the granting of the preliminary injunction defendant discovered the Carmona patent, No. 661,849, which had been granted prior to the patents issued to Rose. Upon motion of defendants an order was made amending the answer to include the Carmona and other patents among those which defendants alleged fully and clearly described the inventions, or substantial and material parts thereof, claimed under the patents in suit.

The case came on for hearing under the amended answer, and, after taking of testimony, it was decided that claims 1 and 5 of patent No. 754,242 were anticipated by the Carmona patent, and that claims 1 to 7 of patent No. 948,553 were invalidated by the Sholes patent, No. 568,630, and so much of the bill of complaint as related to these claims was dismissed. The defendants conceded at the trial that claims 35 and 44 of patent No. 948,553 were valid, and a perpetual injunction was ordered to prevent their infringement by the defendants, who were also ordered to account to plaintiff for profits and damages as to those particular claims.

The preliminary injunction previously granted was vacated.

William R. Davis, Charles S. Jones, and Livingston Gifford, all of New York City, for appellant.

Julian S. Wooster and Clifton V. Edwards, both of New York City, for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This case involves the validity of the Rose patent, No. 754,242, for improvements in typewriters. The patentee realized that it would meet with public favor and answer a public need if a typewriting machine could be so constructed that it could be conveniently and readily transported or carried from place to place as part of one's ordinary hand baggage  To meet the demand for such a machine, the patentee made a machine that was light in weight and capable of being folded into a compact package, but which could also be readily unfolded into operative condition.. The folding and unfolding character of the machine

was secured by means that in no way interfered with the proper operative functions of the parts. The folding capacity was obtained by minimizing the cubical dimensions of the machine without disorganizing or disassembling the parts. An unmechanical operator could turn the parts into their folded positions and secure less cubical dimensions for transportation purposes, and could also, by turning them into their unfolded operative position, have the parts at once ready for use.

Mr. Rose states in his specification that his invention relates to improvements in typewriters, in which he seeks "to produce a new construction of the support or carriage for the typeplaten or cylindrical roller which enables the same to be folded into compact relation to the keyboard, thus making provision for ready and convenient transportation of the instrument." The folding of the platen carriage reduced the height of the machine and made a very compact package, with all the delicate parts of the operative mechanism below the upper bars of the machine when the carriage was in its folded position. The machine was thus rendered transportable in a small and convenient package. At the same time the delicate operating parts were protected by the upstanding and horizontal bars of the frame and carriage support.

When this cause was before us in 1910, the question was whether the court below committed error in granting a preliminary injunction restraining the defendants from infringing the patent. We then held no error had been committed and sustained the injunction notwithstanding the patent in suit had never been adjudicated; as we thought the case came within well-recognized exceptions to the rule that an injunction will not issue upon an unadjudicated patent. In the opinion of the court written by Judge Noyes we said:

"Now it is old in many arts to fold devices in order to obtain compact packages for storage or transportation. Thus patents for folding cameras, folding gocarts, folding organs, and folding wheelchairs are shown upon the record. If, however, these devices in other arts would negative invention in going into the typewriter art and applying the folding principle, it does not follow that the present patent is invalid. It may well be that the folding principle is so old that a patent merely for folding parts of typewriters upon other parts would possess no patentable novelty. But this patent is for the folding of a specific part, the platen carriage, into specific (overhanging) relation to another part, the keyboard, for a specific purpose, obtaining a compact and safe package. We think that it is not shown to be invalid by anything in arts other than that of the typewriter, and that we must look to that art if we are to find anticipation, or such a state thereof as negatives invention."

But before the case came on for final hearing the defendants discovered the Carmona patent, No. 661,849, and upon motion an order was made amending the answer to include it and certain other patents which need not now be mentioned.

Manuel S. Carmona was a citizen of the Republic of Mexico, where he resided. On February 2, 1900, he filed in the United States Patent Office an application for a patent for a new and improved typewriter and the patent was issued to him on November 13, 1900. This patent was regarded in the court below as an anticipation of the claims made in the Rose patents. And the question which is now presented to the court is whether the court below was justified in its conclusion that

claims 1 and 5 of the Rose patent were anticipated by Carmona and were void. Frank S. Rose, at the time he applied for his patents, was a resident of Newark, in the state of New Jersey. In his specification upon which patent No. 754,242 was issued, Rose declared:

"The important features of the present invention is the provision of means whereby the platen and its carriage may be folded into compact relation to the banks of keys, thus making provisions for convenient transportation of the instrument. In carrying out this part of the invention I employ a foldable sectional construction of a frame adapted to support the carriage and the platen, and in the drawings this frame is shown as consisting of two main parts, one of which is carried by the adjustable stems 9, while the other part is pivoted to the nonfoldable part and serves as a track for the platen carriage. The nonfolding part of the carriage frame thus far described consists of arms, 22, 23, arranged in horizontal positions to extend from the front sides of the stems 9 and having their rear portions secured firmly to said stems. The folding part of the carriage frame consists of arms 24, 25 and a base-plate 26. Said arms 24, 25 of the folding member of the carriage frame normally lie alongside of the arms 22, 23, and the two pairs of arms are pivoted directly together, as at 27, in any suitable way. Said pivoted arms 24, 25 are arranged to rest upon the arms 22, 23 when the carriage and the platen are adjusted in their operative positions, as in Figs. 1 to 4, inclusive, thus sustaining the two parts of the frame in compact relation and skeletonizing the frame, so that the type-levers may work between the arms in a way to strike against the platen 10."

He defined claim 1 of the patent as follows:

"(1) In a typewriter, a foldable support for a platen carriage having one of its members movable to an abnormal position in overhanging relation to a keyboard."

And he defined claim 5 of the patent as follows:

"(5) In a typewriter, the combination of a two-part foldable support and a carriage provided with a platen and mounted on the adjustable member of said support; said carriage and the adjustable member being movable into overhanging relation to a keyboard."

These two claims are the only ones in the patent that are alleged to have been infringed by defendants.

The important feature of the patent has been stated. It is properly set forth by the patentee in the language quoted from his specification:

"The provision of means whereby the platen and its carriage may be folded into compact relation to the banks of keys."

It is this feature which is specified in claims 1 and 5. And when the case was before this court this was the feature which we pointed out as the distinguishing feature of the patent. If this distinguishing feature is found in the prior Carmona patent it necessarily invalidates the patent.

The sole question of importance is whether the Carmona patent clearly discloses in a typewriter a folding support for a platen carriage having one of its members movable to an abnormal position in overhanging relation to a keyboard, as specified in claim 1, or a two-part foldable support and a carriage and platen mounted on the adjustable member of the support and the carriage, the adjustable member being movable into overhanging relation to a keyboard, as specified in claim 5.

Carmona, in his specification upon which patent No. 661,849 was issued, declared:

"My invention relates to typewriters of that class in which a small number of keys (for instance, five) is employed, which by their use, either singly or in combination, govern the action of the type-locating mechanism and of a printing device. One object of my present invention is to provide means for locating the type which will be positive in action and which will not be liable to deteriorate by wear, and a further arrangement of the parts, so that the movement of the carriage will be relatively slight, and to provide an improved mechanism for effecting the impression."

He then proceeded:

"The typewriter box or casing consists of an L-shaped section 20, which forms the rear wall and the bottom wall of the typewriter box when closed, and another L-shaped section 21 which, when the box is closed, forms the front and top walls thereof. Journaled in bearings 22 on the section 20 is a shaft 23, extending lengthwise of the typewriter box, and on said shaft is suspended so as to turn therewith the section 21. At the end of the shaft are arranged beveled pinions 24 which engage similar pinions 25, arranged upon transverse shafts 26, which are journaled in the section 20; said shafts having rigidly attached thereto end pieces 27. These end pieces are adapted to form feet for supporting the section 20, as shown in figures 6 to 9. It will be understood that when the section 21 is folded upward the shaft 23, with the pinions 24, will be turned, and this will cause the shafts 26 to turn also, so that the ends 27 will be folded upward to close the box formed by the sections 20, 21. Similarly when the section 21 is folded down into the position shown in the drawings the ends 27 will automotically assume the positions shown."

The Carmona patent is a complicated one, and covers a very complicated structure. The typewriter construction consists of five keys, which serve to operate the type carriage, moving it longitudinally. The type carriage is mounted in front of the platen and is moved bodily longitudinally to bring any one of the type bars opposite the printing point, and throws a hammer below the center of the carriage, when in a normal position, to move the type to printing point. The platen is mounted on a support and is moved to an upper or lower or intermediate position, as the case may be, to receive the impression of one, two, or three type characters on each of the type bars. It was supposed to be held by friction in its upper position, that being its normal position, and to be lowered into an intermediate and lower position by means of two keys at one side of the machine. The platen is rotated by an arm with a ratchet ball connection with the platen and by a thumb piece on the end. It is operated by means of the bell crank and gear connection, with slide operated by the depression of the key. On each depression of the key the escapement mechanism operates to move the platen one-letter space, and at the end of the word the space key is operated to cause the movement of the platen a double space, to make the space between the words. Each of the keys has a pin projecting therefrom and works to confine the pins in operated relation with the straight and inclined slots of the sections of the type-locating bar. On the depression of a key the pin takes the thrust and the entire energy of movement necessary to be imparted to the type-basket or carriage, the rack, and the associating parts.

The typewriter manufactured under the Rose patent and sold under the name of Standard Folding Typewriter has the features of the mod-

ern typewriter and is easy and convenient to operate. The typewriter made under the Carmona patent had only a small number of keys (five), which by their use either singly or in combination governed the action of a type-locating mechanism and of a printing device. The key action of the Carmona machine is very different from the key action of the Rose machine and of the modern typewriters with which the public is to-day familiar. The mechanism for combining these five keys into the necessary number of letters is a complicated one, and the greater part of Carmona's disclosure consisted of a description of the operation of the keyboard and type carriage. The Carmona machine appears to have been a difficult one to operate. There were seven characters which required all five keys to be pressed at once. This could be done by pressing down "with the entire arm or hand."

The key action of the two machines, however, does not now interest us. The Rose machine is, as we have seen, foldable, and so is the Carmona machine. And it is with the foldability of the two machines that we are concerned. The main object of the Rose device as of the Carmona device is the foldability of the machine. In the Carmona machine the carriage mechanism is entirely supported by one member of the box and the key mechanism by another; the two parts being hinged at one corner. In the machine of the Carmona patent the platen support consists of two parts. In the machine of the Rose patent the platen support also consists of two parts. In the Carmona machine the frame is divided into "sections 20, 21," which are hinged together at 23. One of these parts 20 carries the platen and the other part 21 carries the keyboard. In the Rose machine the frame is divided into two parts, consisting of the plate 26 and arms 24 carrying the platen, and the part 5 carrying the keyboard; these parts being hinged together at 27. Claims 1 and 5 of the Rose patent describe the arrangement as a foldable support for a platen carriage, one of whose members (26 in the Rose patent and 20 in the Carmona patent) is movable to an abnormal position in overhanging relation to a keyboard. In our opinion the function of Carmona's part 20 is the function of Rose's parts 26 and arms 24, and the function of Carmona's part 21 is the function of Rose's part 5. The function of Carmona's part 21 and Rose's part 5 is to support the keyboard, and the function of Carmona's part 20 and Rose's part 26 is to support the platen carriage. We think no valid distinction can be drawn between Rose and Carmona as regards the specific typewriter mechanism parts carried by the respective platen supports. In both machines the foldable platen carriage support carries the escapement rack, the line spacing knob, the bell and mechanism for ringing the same when the platen carriage approaches the end of the line, and the tension spring to draw the platen carriage toward the end of the line. In the Carmona machine the foldable platen carriage support has a key for operating dogs to accomplish word spacing, and a key to lower platen to the lowest position, and a key to bring the platen to intermediate position. And in the Rose patent the same support has a key at the right of the platen to release the escapement, and a key at the left to release the grip of the paper.

There is nothing in the Rose patent to confine its claims to a "stand-

ard" machine, nor to a machine with a "universal" keyboard.  There is no indication or suggestion that its claim is limited to a universal keyboard.  And there is no attempt to define what constitutes a "standard" machine or a "universal" keyboard.  We cannot discover that the patent has anything to do with the specific character of the keyboard.  The question of the validity of the patent and the question of the infringement of the patent is obviously not to be determined by the number of the keys constituting the keyboard, or by the number of the parts of the typewriter mechanism added to the foldable part of the platen support.

It is a matter of no consequence, for the purposes of this case, whether the type bars are carried by one or the other part of the foldable support, or whether or not the particular mechanism for causing the keys to operate the type bars is identical, or whether the keyboard contains 5 or 25 keys, or whether the platen support is skeletonized so as to expose some of the parts even when the machine is folded, or unskeletonized so as to completely inclose the entire mechanism when folded, or whether Carmona's platen support is a "box" and Rose's support is a "frame," or whether the operator folds the foldable part of the platen support down toward the keys or the keys up toward the platen.  The one vital and important fact which stands out above all else is that in both of these typewriter machines the platen support is foldable into overhanging relation with the keyboard.  It is that fact which is decisive of this case, because it is that feature which is the subject of claims 1 and 5 of the Rose patent, and it is that feature which is clearly disclosed in the prior Carmona patent.

The complainant's expert was asked on cross-examination what was meant in the Rose patent by the words in claim 1 "overhanging relation to a keyboard."  He answered:

"In the patent in suit, 754,242, this foldable character of the platen carriage support into overhanging relation with the keyboard has for its purpose primarily to bring the parts into such relation that the cubic dimensions of the instrument may be decreased in order to form a compact package convenient for shipment or transportation.  A further object sought by the described characteristic is to provide a proper framework protection for the delicate parts of the typewriter instrument during such transportation.  Viewing the phrase quoted by your question in the light of the purposes and functions sought by the patentee, it is my opinion that these words mean not necessarily the relative position noted by your question, but generally any position of the platen carriage support with relation to the keyboard of the typewriter substantially to secure the objects sought."

The purpose thus defined was as fully accomplished in the Carmona patent by the folding of the machine as it was in the Rose patent.

It has been urged upon us in the argument that the Carmona device has been found commercially impracticable, and the machine has not been manufactured.  One of the experts testified that he regarded the device as practical.  He said, "I don't consider it an impractical device at all."  He was asked, however, "Have you ever seen a machine, other than this model, built on the lines of the Carmona patent that we have been talking about?"  To which he replied: "I have seen another machine which has a key action similar to this Carmona patent, but I have never seen any other machine made to fold like this model in the

223 F.—50

Carmona patent." And it was further brought out that the machine he had seen was not a Carmona machine. It simply had a key action which was of the same general character as that of the Carmona machine. It must be conceded that the Carmona patent is a mere paper patent, but a machine constructed under it is shown to have been capable of a limited, successful, practical operation. The patent is subject to the principle which we announced in Van Epps v. United Box Board & Paper Co., 143 Fed. 869, 874, 75 C. C. A. 77 (1906), when we said:

"Where such patents, or the machines constructed under them, embody the principle covered by a later patent, the mere fact that they are not capable of successful practical working because of objections as to the minor matters of detail in construction will not deprive them of their effect as defenses where they sufficiently disclose the invention claimed in the later patent. Pickering v. McCullough, 104 U. S. 310, 319, 26 L. Ed. 749."

The present suit is said to be another instance of an attempt to defeat a valuable invention by an abandoned "rusty relic." And our attention has been called to a decision which this court made in United Shirt & Collar Co. v. Beattie, 149 Fed. 736 (1907), in which it was said through Judge Coxe that:

"If Pine did nothing more than take an old abandoned failure and by the introduction of new and ingenious features, no matter how simple they may be, convert the rusty relic into a living machine, which does the required work better, faster, cheaper than it was ever done before, he is entitled to the protection which his patent is intended to give."

The circumstances of this case are so unlike the circumstances of that case as to make what was said in that case inapplicable to the facts of this. In that case the Boxley patent, which was the "rusty relic" alluded to, failed to disclose all the elements involved in the Pine device, and this fact, as the court declared, removed it at once from the list of anticipating references. In the case at bar the "rusty relic" of the Carmona patent discloses, in the opinion of the court, the distinguishing feature of the Rose patent.

The thought of making a typewriter foldable can hardly be regarded as a substantial novelty, in view of the well-known practice of making numberless similar articles foldable, from pocket knives to bicycles, including folding cameras, folding wheel chairs, folding beds, folding baby carriages, folding telegraph instruments, and many other articles. The purpose in all such cases has been to bring an extended article into a compact form, occupying little space for convenient transportation.

The problem of so placing the parts of a typewriter in a compact form that it could be easily packed in a small case and transported from place to place was not a particularly difficult one to solve. It required some ingenuity but nothing more. This ingenuity Rose exercised. But this ingenuity, as we have seen, had previously been exercised by Carmona. He had folded a similar machine in a similar way and for a similar purpose. The broad idea is clearly shown by Carmona. His claims read directly on Rose's device, and, being before Rose, his device anticipates. It may be conceded that the Rose typewriter is much the better typewriter. Carmona's machine may have been clumsy and inefficient and commercially unsuccessful; neverthe-

less, the broad idea of foldability was fully disclosed. The foldable support was there. It had one of its members movable to an abnormal position in overhanging relation to the keyboard.

In the machine of the Carmona patent the keyboard is a perfectly definite thing and stays in its position when the typewriter is folded. The essential essence of the Rose invention, compactness, foldability, the protection of the inner parts, are all present in both the Carmona and the Rose machines. Carmona and Rose reached the same general result—safe portability. And each reached it in the same way—by folding and unfolding the platen carriage over the keyboard.

We do not find it necessary to enter upon any discussion of the second Rose patent.

Decree affirmed.