## FOX TYPEWRITER CO v. CORONA TYPEWRITER CO.

## CORONA TYPEWRITER CO. v. FOX TYPEWRITER CO.

(Circuit Court of Appeals, Sixth Circuit. February 7, 1922. On application for Rehearing, June 28, 1922.)

Nos. 3509, 3528.

I. Patents ⟨⇒⟩328—Reissue, 13,934, insufficient as basis for injunction against device not infringing original patent.

Claim 28 of the Rose reissue patent, No. 13,934, for a typewriter with a folding carriage, which narrows the original claim to a typewriter with a standard keyboard, but omits the limitation of the original patent to a carriage folding over the keyboard, will not support an injunction against a device which only infringes by reason of the omission of this limitation.

⟨⇒⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. Patents ⟨⟿141—Narrowing limitation in reissue does not justify broadening in different respect.

A narrowing limitation in claim of reissued patent cannot justify a broadening of the claim in a different respect, when it serves to bring within the monopoly after many years a structure which otherwise would have been free.

3. Patents ⟨⟿328—Reissue, 13,935, for separable escapement mechanism for typewriters, invalid as double patenting.

Claims 19, 20, 22, and 23 of the Rose reissue patent, No. 13,935, for separable escapement mechanism for typewriter with folding carriage, *held* invalid as double patenting, in that they cover combination of separable escapement with any folding feature, while original patent was for combination of the folding feature with any separable escapement.

4. Patents ⟨⟿328—Reissue 13,935, claims 8 and 10, for separable escapement mechanism for typewriters, held invalid.

Claims 8 and 10 of the Rose reissue patent, No. 13,935, for separable escapement mechanism for typewriter with folding carriage, *held* invalid as either double patenting or lacking in invention.

5. Patents ⟨⟿328—1,121,094, for folding typewriter with ribbon mechanism on carriage, held lacking in invention.

The Hazen patent, No. 1,121,094, for a folding typewriter with the ribbon mechanism on the folding carriage, *held* invalid for want of invention, in view of the prior art.

6. Patents ⟨⟿118—Typewriter not inoperative, because manual adjustment of ribbon necessary.

That, under a patent for a typewriter with the ribbon carried on the folding carriage and not disclosing any feeding mechanism, it might have been necessary to adjust the ribbon manually, would not have made it inoperative, so as to invalidate the patent.

7. Patents ⟨⟿20—Transferring ribbon mechanism from stationary to folding carriage not invention.

Where, in the prior art, ribbon mechanisms of the same general type had been mounted on the carriage of a typewriter, and the ribbon had been mounted on a folding carriage, but without feeding mechanism, no invention was involved in transferring the ribbon mechanism from the stationary to the folding carriage.

8. Patents ⟨⟿27(2)—Mere conception of separability in chain of typewriter ribbon-driving elements lacking in invention.

Where, in the prior art, separability in the chain of driving elements between the key lever and the folding carriage of a typewriter was shown, the mere conception of separability in the chain of ribbon-driving elements involved no invention.

9. Patents ⟨⟿328—1,121,097, for separable ribbon drive for folding typewriter, held valid as to claims 19, 23, and 41, and invalid as to 22, 25, 38, and 56.

Claims 19, 23, and 41 of the Hazen patent, No. 1,121,097, for a separable ribbon drive for typewriter with a folding carriage, *held* valid, but claims 22, 25, 38, and 56 invalid for want of invention, in view of the prior art.

10. Patents ⟨⟿328—1,064,372, claim 18, for centering device for typewriter carriage, invalid for want of invention.

The Petermann patent, No. 1,064,372, claim 18, for a centering device to position typewriter carriage for folding, *held* invalid for want of invention, in view of the prior art.

11. Patents ⟨⟿27(2)—No patentable difference between positioning typewriter carriage for different purposes.

There is no patentable difference between positioning a typewriter carriage for printing, as by tabulating mechanism, and positioning it for folding.

12. Patents ⬅328—Reissue, 14,599, for folding typewriter, held lacking In invention.

The Petermann reissue patent, No. 14,599, claims 4, 21, 28, 29, 36, and 37, for a typewriter with a carriage folding at the rear of the frame, instead of forward as in other folding typewriters, *held* void for want of invention.

13. Patents ⬅328—Reissue, 14,599, not rendered valid by inclusion of common element.

The Petermann reissue patent, No. 14,599, claims 26, 33, and 34, is not rendered valid by the addition to an unpatentable combination of a device for locking folding typewriter carriage in place after its return to operating position, and consisting merely of the common gravity engagement of complementary parts.

14. Patents ⬅328—Reissue, 14,495, for folding typewriters, held valid and infringed.

The Latta reissue patent, No. 14,495, for a typewriter, the carriage of which folds in quasi telescopic fashion within the typewriter's frame, *held* valid, and to cover every typewriter having the inventor's characteristic, two-part, telescopically compacting frame; also *held* infringed.

15. Patents ⬅157(1)—Patentee's failure to use does not prevent scope to which reasonably entitled.

That the owner of a patent for a folding typewriter never made any machines thereunder, but held it merely to supplement its other patents and to completely monopolize any folding, cannot prevent giving the claims of the patent the breadth to which they are reasonably entitled.

16. Patents ⬅325—Costs divided, when defendant not wholly successful on appeal.

Where, on appeal from a decree in a patent infringement suit, defendant did not escape an injunction or an accounting, though the decree was modified in its favor, the costs should be divided equally between the parties.

17. Patents ⬅153—Disclaimer required as to void claims before decree.

A disclaimer of claims of a patent held void should be filed before decree for injunction and an accounting as to valid claims.

On Application for Rehearing.

18. Patents ⬅324(5)—Bill not dismissed, because infringing device not formally offered.

Where the evidence showed that device first manufactured by defendant did not infringe, but that the form later adopted by it did infringe, bill *held* not to be dismissed on appeal, necessitating the filing of a new bill, because the last-mentioned form was not formally put in evidence.

19. Patents ⬅328—1,121,097, claims 19, 23, and 41, held infringed.

Claims 19, 23, and 41 of the Hazen patent, No. 1,121,097, for a separable ribbon drive for folding typewriters, *held* infringed.

Appeal and Cross-Appeal from the District Court of the United States for the Western District of Michigan.

Suit by the Corona Typewriter Company against the Fox Typewriter Company. Judgment granting plaintiff partial relief, and both parties appeal. Modified and remanded.

Theodore S. Kenyon and Alan D. Kenyon, both of New York City (William R. Davis, of New York City, on the brief), for Corona Typewriter Co.

Fred Chappell, of Kalamazoo, Mich. (Chappell & Earl, of Kalamazoo, Mich., and George Clapperton, of Grand Rapids, Mich., on the brief), for Fox Typewriter Co.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. This was the usual infringement suit, brought in the court below by the Corona Company against the Fox Company, based upon 8 different patents for typewriters, combining the standard keyboard and type-bar construction, with the capacity for folding into small space, so as to be easily packed and carried. Under the 8 patents, 46 claims were specified and relied upon. Of these 27 were held valid and infringed; 12 valid, but not infringed; and 7 invalid. Both parties appealed, affecting 7 patents and 35 claims. The patents now involved are the following:

Rose, reissue 13,934, filed May 22, 1915, issued June 22, 1915, upon original 754,242, filed February 11, 1903, issued March 8, 1904; Rose, reissue 13,935, filed May 22, 1915, issued June 22, 1915, original 948,553, filed April 18, 1905, issued February 18, 1910; Hazen, 1,121,-094, filed June 23, 1908, issued December 15, 1914; Hazen, 1,121,097, filed June 3, 1909, issued December 15, 1914 (upon a divisional application under last-named patent); Petermann, 1,064,372, filed April 3, 1911, issued June 10, 1913; Petermann, reissue 14,599, filed December 1, 1916, issued February 25, 1919, upon original 1,121,034, filed September 15, 1910, issued December 15, 1914; Latta, reissue 14,495, filed May 24, 1918, issued July 23, 1918, upon original 1,222,-550, filed November 2, 1911, issued April 10, 1917. These different patents and their several claims involved will be considered consecutively, and without regard to which party succeeded below.

The first Rose reissue, No. 13,934, presents the broadest claim of invention, and one which has been the subject of much litigation. The original patent was before the Second Circuit Court of Appeals in Standard Typewriter Co. v. Standard Folding Typewriter Sales Co., 181 Fed. 500, 104 C. C. A. 248, on an appeal from an order granting a preliminary injunction. The order was sustained upon the theory that there was patentability at least in the method of folding, by which the carriage was made to overhang the keyboard, and this feature was used by the defendant. The case came on for final hearing before Judge Hand, who held that the claims were anticipated by the earlier Carmona patents. The decision of the Court of Appeals on the second appeal is found in 223 Fed. 779, 139 C. C. A. 599. Judge Hand's conclusion that the Carmona patent anticipated was upheld, and his decree affirmed. The owners of the Rose patent then surrendered it and procured a reissue. Their substantial ground was that the claims had been drawn in ignorance of the existence of the Carmona, and it was desired to confine them to Rose's invention as it could be distinguished from Carmona—in other words, to narrow the claims, so that they would no longer be anticipated. This resulted in the reissue patent now in suit.

[1, 2] It is not necessary to quote the claims of the original and claim 28 of the reissue, which is the only one now in suit. It is enough to say that those claims of the original, which are of importance in this connection, were not limited to a typewriter having a universal or standard keyboard, but were broad enough to reach and in-

clude the very different keyboard of the Carmona. In this respect claim 28 of the reissue was narrowed. On the other hand, these claims of the original were limited to that particular type of shifting whereby the carriage was folded into overhanging relation to the keyboard. This limitation is omitted from claim 28 of the reissue, which is broad enough to reach any folding of the carriage into more compact relation with any other part of the typewriter. The defendant's structure does infringe the reissued claim; it would not have infringed any original claim. The patentee cannot point to one narrowing limitation in his reissued claim, and thereby hide a broadening in the same claim, when that broadening serves to bring within the monopoly a structure which otherwise would have been free; to say that the claim is narrowed is to state but a half truth; and when this broadening by reissue occurs, as it did here, 11 years after the issue of the original, the reissue is plainly insufficient as a basis for injunction against such a structure. Whether it would be invalid as against a structure not prejudiced by the broadening we need not decide. Plaintiff's argument is in effect that, because the original had a claim broadly to feature $a$ in connection with limiting details and another claim broadly to feature $b$, joined with detailed limitations, it may have on reissue, after this delay, a claim broadly to $a$ and $b$ combined alone. As to this patent the bill must be dismissed. See Automotoneer Co. v. Porter (C. C. A. 6) 232 Fed. 456, 146 C. C. A. 450.

[3] While the first Rose reissue, thus disposed of, pertains most broadly to the foldability of the structure, the second Rose reissue, No. 13,935, relates generally to the separable escapement mechanism. The carriage and platen, which are hinged to the upper part of the frame, carry a rack bar in connection with releasing dogs, which dogs are operated as an escapement to permit the step by step motion of the rack bar and the consequent progress of the platen carrying the paper. A chain of mechanism runs from the finger-operated key to these escapement dogs, whereby each depression of the key permits the rack bar to move one step. All this was old and common; but it was clear that, when the position of the carriage was changed by swinging it up on its hinged edge, this chain of mechanism must yield or break, and it must be so broken that it would be automatically restored when the carriage was dropped back into normal position. This is what is meant by the reference to the separable escapement mechanism. The claims of this patent, both of the original and the reissue, were broadly directed to this feature, and cover it in combination with any form of fold for the carriage. The claims now in suit were not materially broadened when reissued.

There has been much discussion as to whether Carmona disclosed a workable machine, so that it should be included in the prior art. Upon superficial inspection of the Carmona patent, it seems to involve all necessary separability, and that would be the inference from the decisions in the Second circuit, and the action of the patentee in surrendering the first Rose patent for reissue looks toward an admission that Carmona anticipated. On the hearing in the court below, the plaintiff presented a machine built in exact accordance with the

Carmona specification and drawings, and satisfied the trial judge that it was inoperative. Defendant has presented another model, which is said to be built with only the aid of ordinary mechanical skill as applied to the Carmona specifications and drawings, and this may be operative. We do not think it necessary to go into this subject.

The specification and drawings of the first Rose patent did not disclose the details of the key-to-platen chain of mechanism. It says that the rack bar is to be operated by a suitable escapement mechanism, but that, as the mechanism does not form any part of the invention, it is not considered necessary to illustrate or describe it in detail. Since this separability is absolutely essential to make the Rose device work, the patent is either invalid because it does not disclose an operative structure, or else it must be taken as including and calling for any suitable and familiar means for providing this separability. The latter seems to us the more reasonable alternative, in view both of the face of the patent and the constant insistence by plaintiff that it was valid; and while the language of the claims does not literally include this element, it is not inconsistent with such inclusion. Each claim necessarily calls for a typewriter, having the carriage foldable, and still continuing to be an operative typewriter, and thereby necessarily requires that the escapement mechanism shall be separable. Any attempt to apply the claims to a structure which did not have that feature must fail. The patentee would have been the first to say that, of course, a suitable separable escapement was implied in his claims, and a contrary holding would have been very harsh and technical.

This conclusion is fortified by the fact that suitable separability in just such an escapement and for just such a general purpose was well known. The patent to Sholes of September 29, 1896, disclosed the same general key-to-platen chain as was shown by the second Rose patent. Sholes showed a carriage hinged at one side and which could be turned up out of normal position, thereby breaking the escapement mechanism, which was restored on the dropping of the carriage. This Sholes mechanism must be taken as typical of that "suitable escapement" to which Rose refers. It could have been incorporated in the first Rose structure, and only in that or some equivalent way could the implied calls of the claims have been satisfied.

The result of this view is that the claim in suit of the first patent was for the combination of the folding feature with any separable escapement, and that the broad claims of the second patent are for the combination of a separable escapement with any folding feature—precisely the same thing. This is double patenting. It is not an instance of basic and improvement patents, nor of copending or divisional applications. The result of sustaining the second patent would be to extend for nearly six years the monopoly granted by the first patent, covering any foldability in combination with any separable escapement. The claims of the second patent which have this broad aspect are invalid. We think claims 19, 20, 22, and 23 either call for or imply any suitable separable escapement in connection with the folding feature claimed and shown in the first patent, and are therefore within this condemnation. The structure of these claims would

infringe the first patent, and any operative device that could be built under the first patent would infringe these claims of the second. See Miller v. Eagle, 151 U. S. 186, 196, 14 Sup. Ct. 310, 38 L. Ed. 121; Palmer v. Lozier (C. C. A. 6) 90 Fed. 732, 744, 33 C. C. A. 255; Otis Co. v. Portland Co. (C. C. A. 1) 127 Fed. 557, 559, 62 C. C. A. 339.

[4] Obviously, this conclusion would not reach any claims which were limited by the inclusion of some specially suitable details of the separable escapement which were invented by Rose and disclosed by this patent, and the remaining claims sued upon and appealed, 8 and 10, are narrower; but we do not find them characterized by any invention made by Rose. While they are more specific in their description of the separable escapement mechanism, they read in that respect literally upon the Sholes construction; and whether we say that the first patent should rightly be treated as calling for the Sholes construction, since that was well known, and so come to the conclusion that these claims are instances of double patenting, or say that, since Rose was barred from having a valid further patent on the mere combination of carriage foldability and escapement separability, he cannot escape that bar by including in his combination details familiar in the art, which involve no invention beyond the forbidden field—in either case, these two claims cannot stand. The bill must be dismissed as to the second Rose reissue.

[5-7] The Hazen patent, 1,121,094, presents for consideration only one claim, No. 11. This is for the old Rose combination plus a ribbon mechanism carried on a folding carriage. We are not satisfied that this claim was anticipated by the Rose patent, or by the model which Rose had. Each of them disclosed a ribbon carried on spools and mounted on the folding carriage; but claim 11 calls for ribbon mechanism, and the mere carrying of the ribbon on spools on a carriage without feeding means does not fairly answer the call for mechanism. Neither must the presence of such mechanism in the Rose patent be implied, in order to make it operative, as we have held was the case with the separable escapement. Even though it might have been necessary to adjust manually the ribbon disclosed by Rose, the typewriter still would have been operative, in the sense necessary to the validity of a patent. However, when we give the claim the broad construction, which is the only appropriate one in view of the next patent to be considered, we think it involves no invention, in view of Rose and Hammond. The claim purports to cover the idea of mounting any ribbon mechanism on a folding carriage. Since ribbon mechanism of the same general type was old in Hammond, and had been by him mounted on the carriage, and as Rose had disclosed mounting the ribbon and its carriers on a folding carriage, it was not patentable merely to transfer Hammond's ribbon mechanism from a stationary to a folding carriage. The bill must be dismissed as to this patent. Whatever invention Hazen made related to the means by which he was able to put the ribbon mechanism on the folding carriage and make it work. This means he undertook to protect by his next patent.

[8, 9] The Hazen patent, 1,121,097, was the result of a divisional application, under the application for 1,121,094. The ribbon mechan-

ism which he shows is, when considered by itself, precisely that of Hammond; that is to say, each ribbon spool has a vertical shaft carrying at the bottom a horizontal pinion, which is actuated by a worm, the shaft of which carries a ratchet wheel, which in turn is rotated by the intermittent application of a thrust pawl, and the pawl is carried by a rocking frame, which is rocked by the action of the key or space lever when depressed by the fingers. This was the chain, conveying power from key lever to ribbon spool. Since the carriage was to fold up away from the frame, this chain must be so broken somewhere by the folding that it would be automatically restored when the carriage was replaced; in other words, there must be a separable ribbon drive. Since Sholes and Rose had shown separability in the chain of driving elements between key lever and folding carriage, we can see no invention in the mere conception of separability in the chain of ribbondriving elements; but how to get it was not obvious. The most natural thought would seem to be to use the same key-to-carriage chain and the same break therein, and operate the ribbon mechanism on the carriage by direct connection with the escapement; indeed, defendant at first used that construction. There would not have been invention merely in using this existing separability; but Hazen thought best rather to establish a partially independent separability in the key-to-ribbon chain. Out of several places where he might have broken this, he selected as the separable members the worm shaft ratchet on the carriage and a driving pawl on the rocking frame, and he adjusted the other parts to this conception and produced his patented device. This method was successful. So far as we are informed, no other has been; and this particular method of effectuating this separability has been adopted by defendant. We think the patent in this respect valid and infringed. In this last conclusion we are not troubled with the question whether defendant's device is "foldable" within the meaning of the first Rose patent. It is apparent, from the entire Hazen specification, that when speaking of the carriage he used "foldable" and "shiftable" as interchangeable.

Claim 19 is limited to this construction quite specifically. Claims 23 and 41 are less specifically limited, but they refer to the same general construction, and call for the means of accomplishment, rather than for the mere conception of separability. We think they should be considered valid.

We must consider claim 25 as too broad, because it reads upon a structure having no key-to-ribbon separability, independent of or in addition to the breaking which Rose and Sholes had shown. We classify claims 22, 38, and 56 with 25. They have nothing patentable, in view of Rose, Sholes, and Hammond. They do not successfully meet the test of invention which we must here apply, viz. confinement to a separable key-to-ribbon chain, as distinguished from a previously known key-to-platen chain. As to this patent, the bill should be dismissed as to claims 22, 25, 38, and 56, and there should be the usual decree for injunction and accounting as to claims 19, 23, and 41.

[10, 11] The Petermann patent, 1,064,372, presents only claim 18, which relates to a centering device to position the carriage for folding.

The purpose is to make sure in advance that the carriage is centrally placed before folding; and since the defendant's is not positioned until after folding, infringement would be at least doubtful. However, we think the claim is not valid. It was common in many arts to provide for any moving body a stop which, when released for activity, would position and lock the moving body at any desired spot. See Troy Co. v. Ohio Co. (C. C. A. 6) 274 Fed. 612, 618–621. This common expedient had been adopted into the typewriter art by the tabulating typewriter, in which, by depressing a key, a "pivotally held device" became active, so that it would stop the carriage at the selected point, and then a letter or figure could be printed at that point. So far as this claim is concerned, Petermann's construction is clearly equivalent to the tabulator. There is no patentable difference between positioning a typewriter carriage for printing and positioning it for folding. As to this patent, the bill must be dismissed.

[12] In Petermann reissue, 14,599, we find a different method of folding the carriage. In the Rose patent the carriage was hinged at its front edge to the frame, and so, when lifted, it parted from the frame at its rear edge and swung over forward and upside down at the front of the machine. Petermann in this patent planned to slide the carriage back to the rear and then to let it turn downwardly. He hinged the folding carriage at the rear edge of the frame, and he provided slots in the carriage bed in which the hinge pins could slide. No machine was ever built under the patent, so far as we find in the record. Out of a large number of claims, 9 are relied upon. Claims 4, 21, 28, 29, 36, and 37 are not limited in any way to the slotted arm and hinge which give Petermann his only mechanical novelty, aside from the direction of his fold. There was no invention in merely making the carriage fold backward instead of forward. Except for the direction and extent of the fold—to the rear instead of to the front, and continuing wholly below the horizontal, instead of in part stopping there—every one of these 6 claims reads word for word upon Rose; and each one would be infringed by Rose, save for the distinction between front and rear. These claims involve only a change in direction and extent. They are not valid.

[13] Three of the claims, 26, 33, and 34, are additionally limited to a device for locking the carriage in place after it is returned to operating position; defendant uses an analogous, if not an equivalent, lock. However, the lock is nothing but the common gravity engagement of complementary parts; the upper part must be lifted slightly before it will move horizontally. An unpatentable combination cannot be made patentable by adding that element. These three claims are also invalid, and the bill must be dismissed as to this patent.

[14] The Latta reissue, 14,495, shows a clear departure from all those so far considered. Latta carried his keyboard, keys, and attendant mechanism upon a main stationary frame; he supported his carriage upon a distinct and independent frame. The carriage frame was pivoted to the inside of the main frame near the lower front corner, and was free to swing on this pivot, so that the carriage would rise and fall within the main frame and on the arc of a circle. A suitable

lock was provided by which the carriage frame could be held in its highest position and the device would then be operable in the usual way. Latta thus accomplished his compactability by the use of separate frames and by the withdrawal of one part within the other, in quasi telescopic fashion. Compacting by telescopic withdrawal was, of course, common in many arts; but no one had thought of applying that idea to the two parts of the typewriter, and the methods by which it was accomplished do not impress us as obvious. In this situation we see no sufficient reason why we should deny Latta the credit of having made a substantial invention, nor why his claim should necessarily be limited, so as not to reach every typewriter with his characteristic, two-part, telescopically compacting frame.

In reaching this result, we do not give any controlling effect to the mere fact that his construction, like defendant's, permitted the platen and carriage to be lowered into compact position while remaining substantially horizontal; that is, right side up. It may be, as defendant urges, that this is not a particularly valuable result, nor alone a sufficent basis for the claim of meritorious invention; but we may well consider it rather as incidental to the general plan of withdrawing one frame within the other, whenever the pivoting is so located that this result will follow.

[15] We do not overlook the fact that plaintiff never made a machine under the Latta patent, nor the—at least possible—inference that it obtained and held this patent in order to supplement its existing patents on the forward fold and the rearward fold, and with the intention to monopolize completely any folding or compacting. These facts would inspire caution in a doubtful case of validity, and lead to hesitation in giving maximum breadth to claims; but, if the Latta patent was valid, plaintiff had the right to take this course, and it cannot prevent giving his claims the breadth to which they seem reasonably entitled, whatever may be its effect in other phases of the case.

The defendant departs from Latta's specific construction, and many of the claims are not infringed; but the court below thought that 12 of them were. The defendant has a main or stationary frame; its carriage and platen bed is carried upon four links, two parallel ones at each end, which are pivoted respectively to the front and rear corners of this bed and to the main frame at the lower ends of the links, respectively near the front and about midway of the lower edge of the main frame. They can be locked to the main frame when in their topmost position, and while thus rigidly maintained the platen is in operative position with reference to the keys. When released from the lock which holds the links up, the carriage bed will swing upon them backward and downward, until it rests level with the bottom of the main frame and close to the rear thereof. We may take Latta's claim 51 as presenting in a fairly typical way the question of infringement. It reads:

"In a typewriting machine, the combination of type carriers, a keyboard therefor, a platen, and means which enable the machine to be contracted into a smaller space than that which it occupies when in use; said means comprising a frame having relatively movable sections carrying the working parts of the machine, said sections being adapted to fit one within the other,

and means which enable the type carriers and platen to be adjusted bodily, relatively one to the other, into and out of co-operative relation."

The side links of defendant's machine constitute a "movable section," which carries one portion of the working parts of the machine, and the main frame and the links are frame sections, which fit one within the other, when the relative movability is called into action. We think it should be said that defendant's machine has the characteristic quasi telescopic fold or compacting which was Latta's invention. Other claims, like 50, undoubtedly read upon the defendant's device, unless defendant's links ought not to be thought of as a frame; but we think that, when they are elevated and locked they do, in a proper sense, constitute a frame or a frame section, which holds the carriage and platen in operative position.

As to the Latta patent, the decree should be affirmed. Most of the claims held infringed gain patentability from express or implied inclusion of the two-part collapsing frame. As to some of them, this inclusion would be a matter of close construction and differentiation, and the resulting validity or invalidity would be immaterial as to injunction, accounting, costs, or modification of device. We therefore let the affirmance upon this patent be general.

[16, 17] The decree below should be modified in accordance with this opinion, and the case will be remanded for that purpose. Since the defendant does not escape the injunction or accounting, we think it should not recover the full costs of this appeal, but they should be divided equally between the parties. A disclaimer of the claims held void in the second Hazen patent should be filed below, before decree, and within such time as that court allows, pursuant to the practice in this circuit. Westinghouse v. Cooper, 245 Fed. 463, 470, 157 C. C. A. 625. In view of net result of the suit, the decree for costs in that court will be there re-entered or modified, in its discretion.

## On Application for Rehearing.

Both parties have asked for a partial rehearing. In every respect, save one, the matters presented were considered before the opinion in the case was filed, and we see no occasion for reopening.

It is now made clear that in our discussion of the matter of infringement of the second Hazen patent, No. 1,121,097, by the Fox typewriter, we misapprehended the construction of the defendant's machine, as shown in the drawing "Plaintiff's Exhibit 6A." This drawing represents the machine that was offered and received as the evidence of infringement. Upon correcting this misapprehension, it is clear that this machine did not infringe this patent, according to the construction of the patent and the criterion of infringement laid down in the opinion.

[18] During the taking of the proofs, defendant's manager testified that, by its first construction, there was separability between the folding carriage and the frame only at the point where the escapement chain separated, and that the ribbon spools were operated from the escapement mechanism upon the carriage; but he further testified that this method proved unsatisfactory and was abandoned, and the de-

fendant's "present form" adopted. By supposing that the "present form" was thus the real matter in controversy, and by interpreting the witnesses' language about the "present form" as applying to "Plaintiff's Exhibit 6A," we fell into our error. When this was developed, defendants objected to any consideration by this court of the "present form," because it was said not to be in evidence and not to have been considered by the trial court. We concluded that the situation did not call for a dismissal of the bill because only the first machine had been formally put in evidence, thus making necessary the filing of a new bill as to the second form, but that the matter should be disposed of now and here. Thereupon, pursuant to our direction, each party filed in this court a model of the second form about which the manager testified and a memorandum of its views in regard thereto (the defendant filing the same under protest), and we have considered anew the question of infringement by this second form.

[19] In the first form defendant operated the spool ratchet by a pawl arm connected to and moved by a rock bar upon the folding carriage, and this rock bar was in turn actuated by the intermittent contact of an arm rigidly depending therefrom and a directly key-actuated rock bar in the main frame. Thus the carriage rock bar became the source of power for both the escapement and the ribbon mechanism, and there was no separability, excepting that which pertained directly to the key-to-escapement chain. In the second form, the spool ratchet is operated by a pawl on a bell crank, which is pivoted to the frame of the folding carriage, wholly independent from any rock bar, and actuated by the intermittent contact of its bent depending arm with the directly key-actuated rock bar. It is evident that by this change defendant has completely accomplished the independent separability in which we thought there was inventive merit, and has done so by transferring the ratchet operating pawl from the main frame rock bar to the carriage frame. We think this change does not escape the letter of either claim 19 or claim 41, and that it is so far a mere transposition of parts that it should be considered an infringement also of claim 23, and we again conclude that these three claims are valid.

We are asked also to reconsider our conclusion that claims 22, 25, 38, and 56 are too broad to be valid. We can make no differentiating interpretation of these claims which is perfectly satisfactory to us; but we are not satisfied that our previous conclusion as to them was erroneous.

The decree below should be as directed in the former opinion, except that it should specify that the infringement of the second Hazen patent was by virtue only of the so-called second form of the defendant's machine, models of which were filed in this court.

In all other respects, both applications for rehearing are denied.